Mark A. Nickel (14082)
David R. Garner (16054)
**GORDON REES SCULLY MANSUKHANI, LLP**
2 Main, Suite 1600
Salt Lake City, UT 84101
Telephone:  (801) 204-9990
Facsimile: (385) 282-7590
mnickel@grsm.com
dgarner@grsm.com
*Attorneys for Defendant*


Brian Middlebrook (Pro Hac Vice forthcoming)
Alexandra Sandler (Pro Hac Vice forthcoming)
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
Telephone:  (212) 269-5500
bmiddlebrook@grsm.com
asandler@grsm.com
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| Kristin Pilkington, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>Gorsuch, LTD.,<br><br>        Defendant. | **MOTION TO DISMISS UNDER FED. R. CIV. PRO. 12(B)(1), OR TO TRANSFER PURSUANT TO 28 U.S.C. §1404(a)**<br><br>**Case No. 2:24-cv-00434-DBP**<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

**Page(s)**

RELIEF SOUGHT AND GROUNDS FOR RELIEF ............................................................ 1

INTRODUCTION .................................................................................................................. 1

STATEMENT OF RELEVANT FACTS .............................................................................. 1

LEGAL ARGUMENT ........................................................................................................... 3

   I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
MATTER JURISDICTION ................................................................................................ 3

     A.   Plaintiff lacks standing to bring this claim in federal court ................................ 3

        1.   *An increase in junk mail is insufficient to establish standing* .................... 4

        2.   *The alleged statutory violation is insufficient to confer standing* ............. 4

     B.   NISNPIA bars class actions and under *Shady Grove* is not pre-empted by Rule 23,
therefore depriving this Court of Subject Matter Jurisdiction ................................ 9

        1.   *Shady Grove and Justice Stevens' two-part framework* ........................... 9

        2.   *Under Shady Grove, there is no direct collision between the class action bar in  NISNPIA
and Rule 23, and the class action bar in NISNPIA is substantive* ............................ 10

        3.   *If this Court determines there is direct collision, applying Rule 23 would  result  in a
violation of the Enabling Act under Shady Grove* ........................................................ 12

     D.   Plaintiff does not meet the requirements for diversity jurisdiction and therefore, this
Court lacks subject matter jurisdiction .......................................................................... 13

     E.   Plaintiff waived her right to bring a class action pursuant to Defendant's Terms of Use . 14

        1.   *Plaintiff entered into an enforceable browsewrap agreement to which she is bound* ........... 14

        2.   *The class action waiver is enforceable under applicable law* ................................. 16

        3.   *The class action waiver applies to this lawsuit* .................................................. 17

  II.     ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO
DISTRICT COURT OF COLORADO PURSUANT TO 28 U.S.C. § 1404(a) .............................. 18

     A.   The Complaint must be transferred because of the exclusive forum selection clause to
which Plaintiff is bound ...................................................................................................... 18

     B.   The forum selection clause applies to this lawsuit ................................................... 20

CONCLUSION ...................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).........18

*Allison v. Aetna, Inc.* 09-CV-2650, 2010 WL 3219243, at *6 (E.D.Pa Mar. 9 2010) ................................4

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)....................................................................................................................................................16

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)...............16

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas* ....................................................................18

*avuz v. 61 MM, Ltd.*, 465 F.3d 418, 427 (10th Cir. 2006).........................................................................20

*Bearden v. Honeywell Intern Inc.* .............................................................................................................12

*Callegari v. Blendtec, Inc* .........................................................................................................................10

*City & Cnty. of Denver v. Dist. Ct. In & For City & Cnty. of Denver*, 939 P.2d 1353, 1366 (Colo. 1997)20

*City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015)..................................................................3

*Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009) ............................................17

*Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014)...................................................................................................................................................15

*Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-CV-00651-JNP-DBP, 2023 WL 6318108, at *7 (D. Utah Sept. 28, 2023)..............................................................................................................................................13

*Davenport v. Charter Communications, LLC* ............................................................................................12

*Delta Pegasus Mgmt., L.L.C. v. Netjets Sales, Inc.,* No. 221CV00393RJSDAO, 2022 WL 4536757, at *4 (D. Utah Sept. 28, 2022) ....................................................................................................................18

*DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1349 (S.D. Fla. 2017) ........................17

*Digital Landscape Inc. v. Media Kings LLC*, 400 P.3d 1200, 1206-07 (Colo. App. 2018)........................20

*Dwyer v. Am. Exp. Co.*, 273 Ill. App. 3d 742, 745-747, 652 N.E.2d 1351, 1354 (1995).............................8

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018) ..............16

*Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938) ................................................10

*Erlenbaugh v. United States*, 409 U.S. 239, 244, 93 S. Ct. 477, 480, 34 L. Ed. 2d 446 (1972) ................13

*Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) ....................................20

*Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023) ..........................................................5

*Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 232 (M.D. Pa. 2023) ..........................................................8

Garman v. Campbell Cnty. Sch. Dist. No. 1, 630 F.3d 977, 983 n. 6 (10 Cir. 2010) ..................................9

*Gasciogne v. Gasciogne*, No. 2:09-CV-733 TS, 2010 WL 1418881, at *5 (D. Utah Apr. 7, 2010) ...........7

*Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 1 1459359, at *8 (W.D.Wash. May 15, 2007)..................4

*Gutman v. PointsBet USA Inc.* No. 1:22-CV-02137-SKC-SBP, 2024 WL 2106517, at *12-13 (D. Colo. Apr. 18, 2024)....................................................................................................................................16

*Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) ...15

*Laufer v. Looper*...........................................................................................................................................6

*Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022)..................................................................................3

*Lov v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ........................................................8

*Lujan v. Defendants of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) ......4

*Mendoza v. Microsoft, Inc.* .......................................................................................................................20

*Miller v. Corinthian Colleges, Inc.*, 9 F. Supp. 2d 1336, 1348-1349 (D. Utah 2011) ................................16

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)....................................................15

*Nienabar v. Overlake Hospital Medical Center*, No. 2:23-CV-01159-TL, 2024 WL 2133709 .................7

*Palmer v. Convergys Corp.*, No. 7:10-CV-145 HL, 2012 WL 425256, at *7 (M.D. Ga. Feb. 9, 2012).....17

Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 281 (9th Cir. 1984) ..................19

*Phillips v. Philip Morris Companies, Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio 2013) ..................................12

*Phillips v. U.S. Customs and Border Protection*, 74 F.4th 986, 995–96 (9th Cir. 2023)............................8

*Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1162 (10th Cir. 2017) ..........9, 10

*Rain International, LLC v. Cook*, No. 220CV00537JNPDBP, 2021 WL 1063310, at *2 (D. Utah Mar. 18, 2021) ..........................................................................................................................................19

*Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.* ................................................................18

*Richey v. Tahitian Noni Int'l, Inc.*, No. 2:05-CV-514 TS, 2005 WL 8175459, at *4 (D. Utah Dec. 13, 2005) (cleaned up) ...........................................................................................................................7

*Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *3 (D. Utah June 28, 2022) .........................................................................................................................................14

*Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021)........9

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)....................3

*Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) ................................7

*Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018) (cleaned up).............14

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 414, 141 S. Ct. 2190, 2197, 210 L. Ed. 2d 568 (2021)...........5

*United States v. Wilson*, 244 F.3d 1208, 1213 (10th Cir. 2001) ...............................................................3

*Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012) ...............................14

*Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427 (10th Cir. 2006) .....................................................................17

## Statutes

§ 13-37-202 ....................................................................................................................................6

§ 13-37-203(3) ................................................................................................................................9

28 U.S.C. § 1332(a)(1) ...................................................................................................................14

28 U.S.C. § 1404(a) .........................................................................................................................1

F.R.C.P. 12(b)(1) ..........................................................................................................................1, 3

F.R.C.P. 23 ......................................................................................................................................3

Section 13-37-201 ...........................................................................................................................6

**RELIEF SOUGHT AND GROUNDS FOR RELIEF**

Defendant Gorsuch, Ltd. ("Defendant") seeks dismissal of Plaintiff Kristin Pilkington's ("Plaintiff") Complaint with prejudice under F.R.C.P. 12(b)(1) or to transfer this matter pursuant to 28 U.S.C. § 1404(a). This Court must grant Defendant's motion to dismiss pursuant to F.R.C.P. 12(b)(1) because this Court lacks subject matter jurisdiction, as Plaintiff cannot establish Article III standing, NISNPIA prohibits class action relief, and Plaintiff waived the right to pursue a class action against Defendant when Plaintiff agreed to Defendant's Terms of Use. Without the right to sue as a class action, Plaintiff fails to meet the requirements for diversity jurisdiction. Should this Court not grant Defendant's motion to dismiss, Defendant respectfully requests that Plaintiff be compelled to pursue her claims, if at all, in the District Court of Colorado pursuant to the forum selection clause Plaintiff agreed to in Defendant's Terms of Use.

**INTRODUCTION**

On June 14, 2024, Plaintiff, on behalf of herself and a putative class, commenced the instant action. (ECF 1). In her Complaint, Plaintiff alleges that on or after January 1, 2004, including on or about January 2, 2024, Plaintiff purchased consumer products from Defendant Gorsuch, Ltd. ("Defendant") on its website. Complaint ("Compl.") ¶ 9. Plaintiff alleges after she made her purchase, Defendant sold, rented, or otherwise disclosed for compensation, Plaintiff's nonpublic personal information, in violation of Utah's Notice of Intent to Sell Non-Public Personal Information Act ("NISNPIA"). Compl. ¶ 70, 71.

**STATEMENT OF RELEVANT FACTS**

Defendant is a Colorado corporation with its headquarters and principal place of business in Colorado. It is a retail company that offers ski and mountain apparel, ski equipment, regular apparel, footwear, accessories, and home furnishings in stores and on its website at www.gorsuch.com (the "Website"). Declaration of Alexandra Sandler ("Sandler Decl.") ¶ 2.

On or about January 2, 2024, Plaintiff Kristin Pilkington purchased items from Defendant. Plaintiff's purchases were made through the Website. Compl. ¶ 9.

Use of the Website, including making purchases via the Website, is governed by Defendant's Terms of Use. The full text of the Terms of Use is posted on https://www.gorsuch.com/policies/terms-of-service, and it can be accessed by clicking on a hyperlink titled "Terms of Use," which is located on the bottom left corner of each web page contained on the Website. The hyperlink is black, in contrast with light yellow background of each web page. Sandler Decl. ¶ 3. Defendant instructs users and consumers to "read these terms and conditions carefully" because by using Defendant's Website, users and consumers agree to be bound with Defendant's Terms of Use, which includes Defendant's forum selection clause, governing law clause, and class action waiver.

Defendant's governing law clause and forum selection clause provides the following: "Your access to and use of the Website, and these Terms and Conditions are governed and construed in accordance with the laws of the State of Colorado, without regard to its conflicts of law provisions. Any action against Gorsuch arising from or relating to your access to and use of the Website and the provisions of these Terms and Conditions must be brought by you exclusively in the state or federal courts located in Colorado." Sandler Decl. ¶ 4; Ex. A.

Defendant's class action waiver reads as follows: "You acknowledge and agree that you will not seek to litigate any claims against Gorsuch or any of its affiliates in a class action or representative party basis and that you shall pursue such claims solely on an individual basis."  Sandler Decl. ¶ 4; Ex. A.

In order to place an order on Defendant's Website, consumers are required to go through a multi-step checkout process, all while navigating through three different web pages. On the first page, consumers are required to click a "Continue to Shipping" button, followed by a "Continue to Payment" button, followed by a "Pay Now" button. Gorsuch's Terms of Use is accessible through a hyperlink located below each button. The hyperlink is underlined. By clicking on the Terms of Use hyperlink, a pop-up appears displaying the Terms of Use, allowing consumers to review the terms without being directed to another page. Sandler Decl. ¶ 7; Ex. B.

## LEGAL ARGUMENT

## I.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant respectfully requests this Court to dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(1) for lack of subject-matter jurisdiction. "[I]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Cox v. Picklesimer*, No. 2:11-CV-1058, 2014 WL 576344, at *1 (D. Utah Feb. 7, 2014).

This Court lacks subject matter jurisdiction for multiple reasons. First, Plaintiff fails to allege a concrete injury-in-fact, which is necessary to establish Article III standing. Second, F.R.C.P. 23 ("Rule 23") does not pre-empt the class action bar under NISNPIA, thereby depriving the Court of diversity jurisdiction, the sole justification for exercising this Court's jurisdiction. Third, Plaintiff has waived her right to pursue a class action claim when she agreed to Defendant's Terms of Use. Finally, since Plaintiff cannot bring a class action and has not pled damages exceeding $75,000, she fails to meet the threshold requirements for diversity jurisdiction.

### A.      Plaintiff lacks standing to bring this claim in federal court

"Article III of the Constitution permits federal courts to decide only 'Cases' or 'Controversies'." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015); *United States v. Wilson,* 244 F.3d 1208, 1213 (10th Cir. 2001).

In order to establish a case or controversy, a plaintiff must have standing to sue, meaning "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (cleaned up). With respect to the first prong, to establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual and imminent.'" *Spokeo, Inc. v. Robins,*
578 U.S. at 339 (2016) (cleaned up).

Plaintiff, as the party invoking federal jurisdiction, "bears the burden of establishing standing."
*Lujan v. Defendants of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)
(cleaned up). Further, "where, as here, a case is at the pleading stage, the plaintiff must 'clearly…allege
facts demonstrating' each element." *Spokeo, Inc.*, 578 U.S. at 338 (cleaned up). Here, Plaintiff's alleged
injuries, consisting of an assertion of a statutory violation and a "barrage of unwanted junk mail," are not
concrete, and are insufficient as a matter of law to support Article III standing.

1.      *An increase in junk mail is insufficient to establish standing*

Plaintiff's allegation that she has received a "barrage of unwanted junk mail,"[1] as a result of
Defendant's alleged violation of NISNPIA is not a legitimate injury sufficient to establish Article III
standing. Many federal courts have explicitly held that an increase in junk mail and unsolicited e-mail and
telephone communications cannot form the basis of a concrete injury. *See, e.g., Allison v. Aetna, Inc.* 09-
CV-2650, 2010 WL 3219243, at *6 (E.D.Pa Mar. 9 2010) (holding that receipt of spam e-mails was not
sufficient for Article III standing); *Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 l 1459359, at *8
(W.D.Wash. May 15, 2007) (concluding that plaintiffs lacked standing under CAN-SPAM Act of 2003
because the harm suffered "must arise beyond the level typically experienced by consumers – i.e., beyond
the annoyance of spam"). There is nothing in the face of the Complaint that suggests Plaintiff has suffered
a concrete injury, and the mere allegation that Plaintiff has received an increase in junk mail is insufficient
to establish standing.

2.      *The alleged statutory violation is insufficient to confer standing*

Moreover, Plaintiff's allegation that Defendant disclosed Plaintiff's nonpublic personal
information without notice in violation of NISNPIA is not an injury-in-fact under Article III. The Supreme

---

[1] Compl. ¶ 1.

Court of the United States has expressly rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414, 141 S. Ct. 2190, 2197, 210 L. Ed. 2d 568 (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that…defendant over that violation in federal court." *Id.* at 426.

Tangible harms such as physical harm and monetary damages readily qualify as concrete, however some intangible harms may also be concrete, such as reputational harms, public disclosure of private information, and intrusion upon seclusion. *Id.* at 424-425. Central to assessing whether a harm is concrete is "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for lawsuits in American courts." *Id.* In other words, a plaintiff must identify a "close historical or common-law analogue" for his asserted injury. *Id.*

Here, Plaintiff does not claim any tangible harm resulting from a violation of NISNPIA, such as physical injury or monetary loss. Instead, the Complaint solely seeks a statutory penalty of $500 and statutory fees, which is precisely the harm that the *TransUnion* court found to be insufficient. *See TransUnion LLC*, 594 U.S. at 426.

Moreover, Plaintiff cannot identify a common-law analogue for any harm resulting from the alleged lack of notice to disclose Plaintiff's nonpublic personal information. For a plaintiff to demonstrate a concrete injury based on a statutory violation, the statute in question must specifically safeguard against the type of harm being claimed. *See Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023) ("Only when a statutory right protects against such a harm will an alleged violation constitute an injury in fact 'in and of itself.'"). NISNPIA was codified by the Utah Legislature to ensure that consumers are notified about the potential disclosure of nonpublic information. It does not prevent the disclosure of nonpublic information, provided that the commercial entity gives the requisite notice. This is a fair restatement of the harm addressed by NISNPIA, as evidenced by its plain text, which frames the prohibited act as the failure to give proper notice. Indeed, its operative provision states that "[a] commercial entity may not disclose

5

nonpublic personal information…if the commercial entity fails to comply with Section 13-37-201." Utah Code Ann. § 13-37-202. Section 13-37-201 sets forth the requirements for when and how a commercial entity must provide notice that it intends to disclose a consumer's nonpublic information. Further, that the harm addressed by NISNPIA lies in the failure to provide notice is evident in the legislative history of the statute. Representative Aagard, the sponsor of this legislation, stated that his bill is "not prohibiting the business of selling this information. It's strictly notice. If they want to sell it, they can sell it, that's fine."[2]

Because Plaintiff's alleged harm centers on the failure to provide the requisite *notice* under the statute, Plaintiff's alleged harm is best compared to an informational injury. To that end, "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion LLC v. Ramirez*, 594 U.S. at 414. For instance, in *Laufer v. Looper*, the plaintiff alleged that the defendant's hotel reservation system did not provide certain information required by the Americans with Disabilities Act, and she sustained an informational injury. *See* 22 F.4th 871, 874–75 (10th Cir. 2022). The Tenth Circuit held Plaintiff lacked standing because she did not allege an interest in using the information that was missing from the defendant's hotel reservation system; Plaintiff did not allege that she attempted to book a room with the defendant or had an intent to do so. *Id.* at 881. Like *Laufer*, Plaintiff has failed to allege any course of action she would have taken had she been provided notice, such as making the decision to not purchase products from Defendant.

Moreover, even if this Court determined that the harm protected by NISNPIA is not the lack of notice for disclosure but the disclosure generally, Plaintiff cannot identify a common-law analogue to any harm arising from the alleged disclosure of Plaintiff's information, which Plaintiff alleges includes Plaintiff's name, address, the fact that she is Gorsuch consumer, and the dollar amounts of Plaintiff's purchases. Compl. ¶ 70. As discussed below, the harm Plaintiff allegedly suffered is not analogous to the

---

[2] Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040s01 (Jan. 31, 2003) at 57:50, *available* at https://le.utah.gov/av/floorArchive.jsp?markerID=12385.

traditional privacy torts recognized by *TransUnion* that meet the standard for intangible harm, such as publication of private facts and intrusion upon seclusion. *See TransUnion LLC*, 594 U.S. at 425.

To state a claim for disclosure of private facts, Plaintiff must allege three elements: "(1) the disclosure of the private facts must be a public disclosure and not a private one; (2) the facts disclosed to the public must be private facts, and not public ones; and (3) the matter made public must be one that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities." *Gasciogne v. Gasciogne*, No. 2:09-CV-733 TS, 2010 WL 1418881, at *5 (D. Utah Apr. 7, 2010). With respect to the first element, public disclosure "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Richey v. Tahitian Noni Int'l, Inc.*, No. 2:05-CV-514 TS, 2005 WL 8175459, at *4 (D. Utah Dec. 13, 2005) (cleaned up). The tort of intrusion upon seclusion also has an element of offensiveness, and requires that a plaintiff demonstrate (1) an intentional substantial intrusion upon the plaintiff's solitude and (2) that is highly offensive to a reasonable person. *See Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997).

Plaintiff's complaint is devoid of facts supporting either tort. As an initial matter, Plaintiff does not allege that Defendant disclosed her nonpublic personal information to so many persons that the information is "substantially certain to become one of public knowledge." Rather, Plaintiff makes conclusory allegations that Defendant sells Plaintiff's nonpublic personal information to "data aggregators, data appenders, data cooperatives, list brokers, aggressive advertisers, direct-marketing companies, political organizations, non-profit companies, and various third parties." Compl. ¶ 11. Plaintiff fails to identify any specific third parties she believes Defendant disclosed Plaintiff's information to in exchange for compensation, and such conclusory allegations are insufficient to support the publicity element necessary to establish the tort of public disclosure of private facts. *See, e.g., Nienabar v. Overlake Hospital Medical Center*, No. 2:23-CV-01159-TL, 2024 WL 2133709, at *10 (W.D. Wash. May 13, 2024) (finding pleadings lacked necessary

allegations to support a publicity element where the plaintiff merely alleged that her personal information was disclosed to third parties marketers).

Assuming, *arguendo*, that Plaintiff's allegations are sufficient to support a conclusion of public disclosure, Plaintiff has not sufficiently alleged that Defendant disclosed her "private facts" or that the disclosure of such information is highly offensive. Courts have considered information similar or even more sensitive than what Plaintiff alleges Defendant disclosed to not be private or highly offensive. *See, for e.g. Phillips v. U.S. Customs and Border Protection*, 74 F.4th 986, 995–96 (9th Cir. 2023) ("plaintiffs do not show that the type of information contained in the records – names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations – is so sensitive that another's access to that information would be 'highly offensive to a reasonable person.'"); *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 232 (M.D. Pa. 2023) (holding that the defendant's disclosure of plaintiff's shopping preferences and habits on the defendant's website, including the plaintiff's "scroll movements," and the "pages and content" the plaintiff viewed, revealed no private facts about the plaintiff); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of Plaintiff's browsing user history was not highly offensive).

Moreover, with respect to the tort for intrusion into seclusion, a defendant does not commit such a tort when the information it discloses is voluntarily given to the defendant. *See, for e.g., Dwyer v. Am. Exp. Co.*, 273 Ill. App. 3d 742, 745-747, 652 N.E.2d 1351, 1354 (1995) (holding that American Express's alleged actions of renting information regarding plaintiffs' spending habits and shopping preferences was not an unauthorized intrusion when plaintiffs voluntarily provided that information to defendant by using the American Express card). Here, Plaintiff voluntarily provided her information to Defendant when she made a purchase from Defendant's Website.

In summary, Plaintiff has failed to plead any concrete injury beyond the alleged violation of NISNPIA. She cannot identify a common law analogue to her alleged injury for lack of information, and

even if this Court views the injury as the lack of disclosure, there is no common-law equivalent. As such, Plaintiff lacks Article III, and the Complaint must be dismissed.

**B.      NISNPIA bars class actions and under *Shady Grove* is not pre-empted by Rule 23, therefore depriving this Court of Subject Matter Jurisdiction**

Plaintiff's sole cause of action is for a violation of NISNPIA and is brought individually and "on behalf of all others similarly situated" as a class. Compl. ¶ 61. NISNPIA explicitly prohibits class actions. The statute unambiguously provides that "[a] person may not bring a class action under this chapter." Utah Code § 13-37-203(3). As such, because the statute prohibits class actions, Plaintiff's claim cannot proceed as a class action. *See, for e.g., Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021) (dismissing Plaintiff's class action claim brought under NISNPIA).

Presumably, Plaintiff will argue, to her own peril, that F.R.C.P. 23 ("Rule 23"), which provides the procedural mechanism for a plaintiff to bring a class action in federal court, preempts the class act prohibition outlined in NISNPIA, and will cite *Shady Grove Orthopedic Assocs., P.A. v. All State Ins. Co.* in support of this argument. However, as discussed below, *Shady Grove* demonstrates otherwise.

*1.      Shady Grove and Justice Stevens' two-part framework*

In *Shady Grove*, the Court addressed the issue of whether a New York statute which prohibited class actions in suits seeking penalties or statutory minimum damages precluded a federal court sitting in diversity from entertaining a class action under Rule 23. *See* 559 U.S. 393, 396, 130 S. Ct. 1431, 176 L.E.2d 311 (2010). The Supreme Court split three ways, with a four-justice plurality opinion authored by Justice Scalia, a four-justice dissent authored by Justice Ginsburg, and a concurring decision authored by Justice Stevens. *See id.* Justice Stevens' concurring decision is controlling in the Tenth Circuit and this Court must apply it. *See Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1162 (10th Cir. 2017); *Garman v. Campbell Cnty. Sch. Dist.* No. 1, 630 F.3d 977, 983 n. 6 (10th Cir. 2010).

Justice Stevens's concurrence established a two-part framework when both a federal rule and state law appear to govern an issue before a federal court sitting in diversity. *Shady Grove*, 559 U.S. at 421, 131

S. Ct. 1421. First, the Court must determine "whether the federal rule is 'sufficiently broad' to 'control the issue' before the court, 'thereby leaving no room for the operation' of seemingly conflicting state law." *Id.* (cleaned up). If the federal rule and state rule can operate side by side, there is no conflict, and the Court must proceed with its analysis pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938). *See id.* "[T]he *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law." *Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1162 (10th Cir. 2017) (cleaned up). "To decide whether a state law is substantive and therefore applicable in federal courts, the court 'must decide whether applying the law will significantly affect the outcome of the litigation.'" *Id.* (cleaned up).

However, if a conflict exists, the Court must move to the second step of Justice Stevens' framework. *Shady Grove*, 559 U.S. at 422, 131 S. Ct. 1421. Under the second step, "the Court must decide whether application of the federal rule 'represents a valid exercise' of the rulemaking authority" bestowed by the Enabling Act. *Id.* "The Enabling Act requires, *inter alia*, that federal rules 'not abridge, enlarge, or modify any substantive right.'" *Id.* In other words, a federal rule "cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.

2.      *Under Shady Grove, there is no direct collision between the class action bar in NISNPIA and Rule 23, and the class action bar in NISNPIA is substantive*

Under *Shady Grove*, there is no direct conflict between NISNPIA's class action bar and Rule 23. The instant case concerns a law similar to the one analyzed in this District in C*allegari v. Blendtec, Inc.* In *Callegari*, the Court determined whether Utah's Consumer Sales Practices Act ("UCSPA"), which limited class action relief to specific circumstances, was preempted by Rule 23 under *Shady Grove*. *See* No. 2:18-CV-308-DB, 2018 WL 5808805, at *3 (D. Utah Nov. 6, 2018). In applying step one of Justice Stevens' two-part framework, the Court determined that "Rule 23 does not explicitly set forth exclusive procedural requirements for maintaining a class action" as Rule 23 provides that "a class action *may* be maintained."

*Id.* at *4. (cleaned up). Further, "in light of the [Supreme Court's] directive to avoid collision where possible," the Court held that Rule 23 and UCSPA's class action limitation were not in direct conflict and could be enforced side by side. *Id.* at *4. (cleaned up).

Having found no direct conflict, the Court proceeded with its analysis under *Erie. Id.* In determining that the class action limitation in UCSPA was substantive, the Court noted that "[i]n many cases, the availability of a class action mechanism significantly affects recovery or non-recovery as a practical matter." *Id.* Moreover, the Court recognized that the Utah state legislature set forth the rights and remedies available under the USCPA and specified the limited circumstances in which class actions for damages are permitted. *Id.* Ignoring these attributes of the law would result in "different measures of substantive rights enforced in state and federal courts," and "inequitable administration of the law," contrary to *Erie's* command. *Id.* Since the state law is substantive, the Court determined that it must be enforced. *Id.*

Like *Callegari*, there is no direct collision between Rule 23, which provides that a class action may be maintained, and NISNPIA, which explicitly prohibits class action relief under the statute. As there is no direct collision between the federal rule and state law, the Court must analyze whether NISNPIA is substantive under *Erie.* Similarly to the statute in *Callegari*, here, the Utah Legislature set forth the rights and remedies available under NISNPIA and prohibited class actions in the same statute. Ignoring these attributes in NISNPIA would create inconsistencies in the application of NISNPIA between state and federal court, and result in "inequitable administration of the law." The prohibition of the class action affects recovery or non-recovery as a practical matter because plaintiffs may be reluctant to sue in an individual capacity as opposed to a class action. Moreover, class actions in practice relaxes the need for individualized proof, potentially allowing plaintiffs to recover more than they could in state court. Since the class action bar in NISNPIA is substantive, this Court must enforce it. Plaintiff's claim cannot proceed as a class action.

3.      *If this Court determines there is direct collision, applying Rule 23 would result   in a violation of the Enabling Act under Shady Grove*

If this Court determines that there is a "direct collision" between Rule 23 and NISNPIA's class action prohibition, it must assess the statute under the second step of Justice Stevens' two-part framework and determine if NISNPIA's class action restriction is "so intertwined" with NISNPIA's rights and remedies that applying Rule 23 in its stead would "abridge, enlarge, or modify" a substantive right in violation of the Enabling Act. The class action bar is also substantive under this test.

In applying Justice Stevens' second step with respect to whether a state class action restriction is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right," federal courts have looked at whether the class action restriction is embedded within the statute that creates the substantive right and whether the class action restriction only applies to cases brought under the state statute. *See Phillips v. Philip Morris Companies, Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio 2013). When these conditions are met, courts have determined that the class action restriction is substantive and application of Rule 23 would violate the Enabling Act. For instance, in *Davenport v. Charter Communications, LLC*, the district court concluded that because the class action restriction was found within the same statute that authorized a private right of action for unpaid overtime wages, and the restriction only applied to violations of the Kentucky Act, the class action restriction defined the scope of substantive rights under the Kentucky Act and Rule 23 could not apply. 35 F. Supp. 3d 1040, 1051 (E.D. Mo. 2014). Moreover, *Bearden v. Honeywell Intern Inc.*, the district court, in applying Justice Stevens' two-part frame work, struck the class action allegations in the lawsuit because "[t]he statutory provision that authorizes a private right of action for a violation of the [Tennessee Consumer Protection Act] limits such claims to those brought 'individually." No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010). The Court further noted that, "[u]nlike in *Shady Grove*, the limitation here is contained in the substantive statute itself, not in a separate procedural rule." *Id.* Consequently, the court determined that the restriction was "part of Tennessee's framework of substantive rights and remedies," and therefore Rule 23 did not apply. *Id.*

Here, the class action bar is integrally and intentionally "intertwined" with the substantive right codified in NISNPIA. Similarly to the statutes in *Davenport* and *Bearden*, and unlike the New York statute in *Shady Grove*, the class action restriction in NISNPIA is embedded within the same statute that authorizes the private right of action. Moreover, NISNPIA's class action restriction applies to claims made under that statute and does not extend to claims based on other laws in Utah, federal law, or the laws of any other state.

As Justice Stevens explained, "when a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Shady Grove*, 559 U.S. at 421. This is precisely what the Utah Legislature did when it enacted NISNPIA and restricted the statute's application to individual claims. The class action bar "defines the scope of substantive rights or remedies" by preventing what would otherwise be a single plaintiff seeking a remedy capped at the $500 statutory penalty from turning into a large-scale litigation. Without the bar, numerous claims could be bundled into a class action, reducing the requirement for individualized proof, and could dramatically increase potential liability and damages for Utah businesses. This Court should respect the Utah legislature's choice to limit class action relief, and dismiss Plaintiff's class action claim in this matter.[3]

### D.    Plaintiff does not meet the requirements for diversity jurisdiction and therefore, this Court lacks subject matter jurisdiction

As stated, Plaintiff's class action claim must be dismissed under NISNPIA. As Plaintiff cannot bring this claim as a class action, Plaintiff must invoke this Court's diversity jurisdiction in order for this

---

[3] Defendant recognizes that *Curry* reached the opposite conclusion. *Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-CV-00651-JNP-DBP, 2023 WL 6318108, at *7 (D. Utah Sept. 28, 2023).  To the extent Defendant's position is inconsistent with *Curry*, Defendant respectfully disagrees with the holding, and this Court is not bound by it. In *Curry*, Judge Parrish read the subsections of NISNPIA separately, and determined that §203(3), which provides the class action prohibition, was not a statement of rights or remedies and entirely a matter of procedure. *Id.* at *6-7. However, "[i]ndividual sections of a statute must be read together." *Erlenbaugh v. United States*, 409 U.S. 239, 244, 93 S. Ct. 477, 480, 34 L. Ed. 2d 446 (1972). When read together, it is clear the statute operates as one statutory scheme that provides a right to notice of the disclosure of non-public information, with any claims to remedy a violation of this right required to be pursued individually. The class action bar is "intertwined" with and defines the scope of the substantive right.

Court to have subject-matter jurisdiction over Plaintiff's claim. A district court has subject matter jurisdiction over a civil action where the action is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). In the Complaint, Plaintiff seeks "an award of $500 to Plaintiff and each Class member." Compl. at p. 28. Without Plaintiff's class action claim, Plaintiff's amount in controversy is only $500. Because Plaintiff does not meet the requirements for diversity jurisdiction, this Court lacks subject-matter jurisdiction, and the Complaint must be dismissed in its entirety.

**E.     Plaintiff waived her right to bring a class action pursuant to Defendant's Terms of Use**

Even if the Court is inclined to believe that Plaintiff can maintain a class action under the statute, which she cannot under *Shady Grove*, Plaintiff has nonetheless waived her right to proceed on a class action basis when she agreed to Defendant's Terms of Use. Accordingly, Plaintiff's Complaint must also be dismissed for lack of subject matter jurisdiction because she waived the right to pursue class action claims against Defendant, and without Plaintiff's class action claims, this Court lacks subject matter jurisdiction over this matter.

*1. Plaintiff entered into an enforceable browsewrap agreement to which she is bound*

By purchasing a product on Defendant's Website, Plaintiff agreed to the terms set forth in Defendant's Terms of Use on the Website, including the class action waiver. Contracts available on the internet come in different forms. With respect to a browsewrap agreement, "the terms are documented somewhere on a retailer's website and purported to apply to a user by virtue of accessing that website." *Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *3 (D. Utah June 28, 2022). "[T[he consumer in a browsewrap agreement conveys assent simply by using the product." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012). "To be valid, a browsewrap agreement must give reasonable, constructive, or inquiry notice to the website's terms of service to the user[.]" *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018) (cleaned up). The "conspicuousness and placement of the 'Terms of Use' hyperlink" and the website's "general design all

contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

The manner in which Defendant's Terms of Use is presented to users is similar to that in *Temple v. Best Rate Holdings LLC*, where the district court determined that the defendant provided users of its website with reasonable notice of its terms and conditions. 360 F.Supp.3d at 1304. In *Temple*, a hyperlink to the defendant's terms and conditions was prominently displayed directly above a "Get a Quote" button that consumers using the defendant's website were required to click on in order to complete his registration. *See id.* The *Temple* court determined that based on the placement of the terms and conditions hyperlink located above the "Get a Quote" button, the plaintiff "must have brought the Terms and Conditions Hyperlink within his line of vision before viewing and proceeding to click the 'Get a Quote' button." *Id.* at 1304-1305. Consequently, the Court held that "[t]he Terms and Conditions Hyperlink was placed in a manner conspicuous enough to provide reasonable notice to a prudent user, thereby requiring the user to affirmatively acknowledge the Terms and Conditions Hyperlink before proceeding. Because the website provided reasonable notice of the Agreement, it is enforceable." *Id.* Similar browsewrap agreements have been upheld by courts in other districts. *See e.g., Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (upholding an agreement when plaintiff had to click a "Place Order" button with a sentence immediately above containing a hyperlinked Terms and Conditions); *Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (upholding an agreement when plaintiff clicked on a log-in button directly below a hyperlink to the terms of use).

For the same reasons the terms of use in *Temple* was enforceable, Defendant's Terms of Use are enforceable against Plaintiff. Whereas in *Temple*, the terms and conditions hyperlink was located above the "Get a Quote" button, indicating that the plaintiff must have brought the hyperlink within his line of vision before proceeding to click the "Get a Quote" button, here, the Terms of Use hyperlink is located below several action buttons that users, including Plaintiff, are required to click on in order to make a purchase on

Defendant's Website. Ex. B. Plaintiff was not required to scroll to view the Terms of Use hyperlink when she made a purchase on the Website and must have brought the hyperlink within her line of vision before making a purchasing from Defendant's Website. By clicking on the Terms of Use hyperlink, a separate window would have opened up to Plaintiff presenting the full text of the Terms of Use. Ex. B. Accordingly, Plaintiff was put on notice and agreed to the Terms of Use, including the class action waiver.

2.      *The class action waiver is enforceable under applicable law*

Defendant's Terms of Use expressly prohibits any class action claims. The Terms of Use include a governing law clause providing that Defendant's Terms of Use are governed by the laws of Colorado. For the avoidance of doubt, regardless of whether this Court applies Utah or Colorado law, the prohibition is fully enforceable. *Miller v. Corinthian Colleges*, *Inc.*, 9 F. Supp. 2d 1336, 1348-1349 (D. Utah 2011); *Gutman v. PointsBet USA Inc.* No. 1:22-CV-02137-SKC-SBP, 2024 WL 2106517, at *12-13 (D. Colo. Apr. 18, 2024).

As an initial matter, the Supreme Court has consistently upheld contractual provisions waiving the right to proceed in a lawsuit against a defendant as a class or collective action. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018); *see also American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). As the Supreme Court stated in *American Express Co.*, Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights." 570 U.S. at 234.

Moreover, this Court has upheld class action waiver agreements applying Utah law. For instance, in *Miller*, this Court upheld a waiver requiring plaintiffs to resolve disputes individually, despite UCSPA allowing class actions. 9 F. Supp. at 1348-1349. This Court rejected the plaintiff's argument that the class action waiver was unconscionable, stating: "[T]he Court cannot find that the class action waivers are substantively unconscionable under Utah law." *Id.*

Moreover, in *Gutman*, the District Court of Colorado considered whether a class action waiver in a defendant's terms and conditions on its website was enforceable against the class action plaintiffs under Colorado law. 2024 WL 2106517, at *12-13. The class action waiver provision read as follows:

> CLASS ACTION WAIVER. The parties agree that any arbitration or litigation shall be conducted in their individual capacities only and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis. YOU AND POINTSBET AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.
>
> *Id.* at *3.

Applying Colorado contract principles, the court interpreted the language of the provision according to its plain language, which it found unambiguously prevented the plaintiffs from engaging in any representative proceeding against the defendant. *See id.* at *13. Consequently, the Court upheld the class action waiver, finding "no reason under Colorado law to decline to enforce the class action waiver." *Id.*

Moreover, courts in other districts have upheld similar class action waivers outside the context of arbitration settings. *See, for e.g. Palmer v. Convergys Corp.*, No. 7:10-CV-145 HL, 2012 WL 425256, at *7 (M.D. Ga. Feb. 9, 2012); *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1349 (S.D. Fla. 2017).

In accordance with the applicable law, Defendant's class action waiver in its Terms of Use is enforceable. Accordingly, Plaintiff is prohibited from bringing this class action claim, and Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction.

3. *The class action waiver applies to this lawsuit*

The class action waiver in the Terms of Use applies to this lawsuit. "[W]hen a court interprets a contract, as a general matter it applies the law that the parties selected in their contract." *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427 (10th Cir. 2006). Under Colorado law, contract interpretation "is a question of law for the court to decide." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009). "The

primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Copper Mountain, Inc.*, 208 P.3d at 697. If the language of a contract "is plain, clear, and unambiguous, a contract must be enforced as written." *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003) (cleaned up).

The plain language of the class action waiver in the Terms of Use is clear that class actions are impermissible for any claims against Defendant. The waiver does not limit the claims to those arising from use of the Website. However, even if it did, Plaintiff's claims clearly arise from her use of the Website, as Plaintiff alleges that Defendant sold her information which she claims Defendant obtained after Plaintiff made a purchase from Defendant's Website. Compl. ¶ 9, 11. Therefore, the class action waiver applies to this lawsuit, and Plaintiff's claims must be dismissed.

## II.  ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO DISTRICT COURT OF COLORADO PURSUANT TO 28 U.S.C. § 1404(a)

### A.  The Complaint must be transferred because of the exclusive forum selection clause to which Plaintiff is bound

Because the Terms of Use are enforceable and the class action waiver applies to this matter, Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction. However, in the event this Court disagrees, Defendant requests this matter be transferred to the District Court of Colorado, as Plaintiff's claim is encompassed by the forum selection clause contained in Defendant's Terms of Use. A forum selection clause "may be enforced through a motion to transfer under § 1404(a). *Delta Pegasus Mgmt., L.L.C. v. Netjets Sales, Inc.,* No. 221CV00393RJSDAO, 2022 WL 4536757, at *4 (D. Utah Sept. 28, 2022).

In *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, the Supreme Court provided: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer

the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied." 571 U.S. 49, 62, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013). With respect to a motion pursuant to §1404(a), the Supreme Court has provided instructions for analyzing the enforcement of a valid forum-selection clause: "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. "Second, a court evaluating a defendant's §1404(a) should not consider arguments about the parties' private interests[.]" *Id.* at 64.

In determining whether a forum selection clause is enforceable and whether it applies to the dispute in question, courts "have applied federal law to issues of enforceability, while interpreting the clauses text itself according to state law (typically the state identified in a related choice of law clause.)" *Delta Pegasus Mgmt., L.L.C.* 2022 WL at *4.

The Tenth Circuit classifies forum selection clauses as either "mandatory" or "permissive" in determining whether to enforce a forum selection clause. *See, for e.g., American Soda, LLP v. U.S. Filter Wastewater Group Inc.*, 428 F.3d 921, 926-927 (10th Cir. 2005). "[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory." *Id.* at 927. The Court "must 'enforce a mandatory forum selection clause 'unless the party challenging it 'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Rain International, LLC v. Cook*, No. 220CV00537JNPDBP, 2021 WL 1063310, at *2 (D. Utah Mar. 18, 2021) (cleaned up). Location of evidence, witnesses, and activities in another jurisdiction, without more, does not render a forum selection clause unreasonable. *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th Cir. 1984).

A forum selection clause is mandatory where the agreement contains "clear language showing that jurisdiction is appropriate only in the designated forum." *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106

F.3d 318, 321 (10th Cir. 1997) (cleaned up). For instance, in *American Soda LLP*, the Tenth Circuit interpreted a clause designating the Colorado state courts or arbitration as the "*exclusive forum* for the resolution of any disputes related to or arising out of the contract." 428 F.3d at 927. (emphasis added). The Court determined that because the parties consented to and selected the Colorado state courts as the exclusive forum, "the parties indicated their intent to make venue exclusive in state court with respect to any disputes not resolved in arbitration" and held that the forum selection clause was mandatory. *Id.* at 927.

Like the forum selection clause in *American Soda LLP*, the forum selection clause in the Terms of Use is mandatory because Plaintiff and Defendant agreed that the Colorado state or federal courts would have *exclusive* jurisdiction. Plaintiff cannot show the forum selection clause was unreasonable or the result of fraud. Therefore, the forum selection clause must be enforced.

### B.  The forum selection clause applies to this lawsuit

The forum selection clause applies to this matter. As stated above, because the Terms of Use incorporate a clause specifying that they are governed by the laws of Colorado, the Court must apply Colorado law. *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427 (10th Cir. 2006). Colorado courts have construed the language "relating to" in a forum selection clause broadly. *See, for e.g., Digital Landscape Inc. v. Media Kings LLC*, 400 P.3d 1200, 1206-07 (Colo. App. 2018) ("The ordinary meaning of the phrase 'relating to' is broad"); *see also City & Cnty. of Denver v. Dist. Ct. In & For City & Cnty. of Denver*, 939 P.2d 1353, 1366 (Colo. 1997).

*Mendoza v. Microsoft, Inc.*, included a forum selection clause similar to one included in Defendant's Terms of Use. In *Mendoza*, the plaintiffs sued Microsoft for violations of the Video Privacy and Protection Act and other state laws after Microsoft allegedly sold their personal data, obtained from plaintiffs' use of Microsoft's Xbox LIVE Service, to data-mining companies for a profit. *See* 1 F. Supp. 3d 533, 539 (W.D. Tex. 2014). The plaintiffs agreed to Microsoft's Terms of Use for the Xbox LIVE Service, which provided the following: "If this contract is with Microsoft Corporation, you consent to the exclusive jurisdiction and venue of state and federal courts in King County, Washington USA, for all disputes relating

to this contract or the Service." *Id.* The Court interpreted the term "relating to" broadly and determined that the forum-selection clause applied to the plaintiff's claims. *Id.* at 548. Because the plaintiff's claims related to the manner in which Microsoft handled their personal data in connection with the Xbox LIVE Service, the Court determined that the plaintiffs' claims came within the scope of the forum-selection clause's "relating to" provision. *Id.* Similarly here, Plaintiff alleges that Defendant sold her information obtained from Plaintiff's use of the Website. Plaintiff's claim is therefore "related to" the use of the Website, and the forum selection clause applies.

## **CONCLUSION**

For the reasons set forth in the memorandum, Plaintiff's Complaint must be dismissed pursuant to F.R.C.P. 12(b)(1) as this Court lacks subject matter jurisdiction due to Plaintiff's failure to establish Article III standing. Furthermore, NISNPIA prohibits class action relief, and Plaintiff cannot pursue a class action having agreed to Defendant's Terms of Use which waives that right. As Plaintiff fails to meet the requirements for diversity jurisdiction, this Court also lacks subject matter jurisdiction on this basis. Should this Court not grant Defendant's motion to dismiss, this case should be transferred to the District of Colorado in accordance with the forum selection clause outlined in Defendant's Terms of Use.

Dated: October 4, 2024

Respectfully submitted,

*/s/ David Garner*
Mark A. Nickel (14082)
David R. Garner (16054)
**GORDON REES SCULLY MANSUKHANI, LLP**
2 Main, Suite 1600
Salt Lake City, UT 84101
Telephone:  (801) 204-9990
Facsimile: (385) 282-7590
mnickel@grsm.com
dgarner@grsm.com
*Attorneys for Defendant*

21

Brian Middlebrook (Pro Hac Vice forthcoming)
Alexandra Sandler (Pro Hac Vice forthcoming)
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
Telephone:  (212) 269-5500
bmiddlebrook@grsm.com
asandler@grsm.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2024, a true and correct copy of the foregoing document was

served on all counsel of record who have consented to electronic service via the Court's ECF system.

By:      */s/ David Garner*
                  David Garner