Mark A. Nickel (14082)
David R. Garner (16054)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W. South Temple St., Ste. 1600
Salt Lake City, UT 84101
Telephone: (801) 204-9989
mnickel@grsm.com
dgarner@grsm.com

Brian Middlebrook (Pro Hac Vice Admission)
Alexandra Sandler (Pro Hac Vice Admission)
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
Telephone: (212) 269-5500
bmiddlebrook@grsm.com
asandler@grsm.com
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| KRISTIN PILKINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GORSUCH, LTD,<br><br>Defendant. | **REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**<br><br>Case No. 2:24-cv-00434-RJS-DBP<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |
|---|---|

Defendant Gorsuch, Ltd. ("Defendant"), by and through undersigned counsel, hereby replies in support of its Amended Motion to Dismiss under Fed R. Civ. Pro. 12(b)(1) or to Transfer Pursuant to 28 U.S.C. §1404(a) [ECF 18] ("Motion to Dismiss or Transfer").

## INTRODUCTION

Plaintiff's Opposition to Defendant's Motion to Dismiss or Transfer [ECF 27] ("Opposition" or "Opp.") is insufficient to overcome Defendant's Motion to Dismiss or to Transfer

as it contains numerous defects. Plaintiff fundamentally mischaracterizes the nature of the harm protected by the Notice of Intent to Sell Non-Public Information Act ("NISNPIA"), which exclusively concerns the failure to provide notice. Plaintiff's alleged ham, most analogous to an informational injury, is insufficient to establish Article III standing. To the extent this Court determines the harm protected by NISNPIA is disclosure, Plaintiff still fails to identify a common law analogue sufficient for Article III standing. Moreover, Plaintiff's argument that the class action bar is preempted by Rule 23 is flawed as the case Plaintiff relies on failed to apply the framework adopted by Justice Stevens in *Shady Grove*. When applying the correct framework, it is evident the class action bar in NISNPIA must yield. Consequently, because Plaintiff lacks Article III standing and cannot bring the matter herein as a class action, this Court lacks subject matter jurisdiction. Finally, Plaintiff entered into an enforceable agreement with Defendant that includes a valid class action waiver and forum selection clause. For these reasons, and those discussed in Defendant's brief, this Court must grant Defendant's Motion to Dismiss or Transfer.[1]

## ARGUMENT

### I. Plaintiff Lacks Article III Standing Because Plaintiff Fails to Allege a Concrete Injury, and Therefore, This Court Does not have Subject Matter Jurisdiction

"Article III requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016). In Plaintiff's Opposition, Plaintiff goes to great lengths to argue that Plaintiff has a common law analogue to her alleged injury sufficient to support a concrete injury for Article III standing. For the reasons discussed below, Plaintiff's arguments fail on all fronts.

[1] Unless otherwise indicated, all defined terms from Defendant's initial brief are hereby incorporated and set forth as if fully defined herein.

As an initial matter, Plaintiff contends that Defendant's reliance on pre-*Spokeo* decisions to argue that the receipt of spam or junk mail is insufficient to establish Article III standing is misplaced. (Opp. at 4). However, courts post-*Spokeo* have similarly concluded that the receipt of spam or junk mail does not constitute a concrete injury sufficient for Article III standing. *See e.g.*, *Blood v. Labette Cnty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022) (inconvenient disruptions such as spam calls, text messages, and e-mails do not constitute an injury); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) ("receiving spam or mass mail does not constitute an injury."). This Court should hold the same.

Plaintiff also argues that the harm protected by NISNPIA is not the failure to provide notice of an intent to disclose non-public information, thereby making the injury informational by nature, but rather the disclosure of non-public information itself. Plaintiff's argument relies on Judge Parrish's interpretation of the harm addressed by the statute in *Curry II*. (Opp. at 4). Defendant respectfully disagrees with Judge Parrish's analysis of the statute.[2] In construing a statute, it is the Court's primary responsibility to ascertain the intent of the legislature who enacted the statute. *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008). The Court begins by examining the statute's plain language. *Id.* If the statute's plain language is ambiguous as to the legislature's intent, the Court must look to the legislative history and the underlying public policy of the statute. *Id.* The Court may take judicial notice of a statute's legislative history, including relevant legislative committee reports and publications. *See Valiente v. Dineequity, Inc.*, No. CIV.A. 08-2416-KHV, 2009 WL 1226743, at *1 (D. Kan. May 1, 2009) (citing cases). The intent of the legislature, "not judicial analysis of proper policy, must be the interpretation of the statute." *U.S.*,

[2] At best, Judge Parrish's decision in *Curry* is persuasive authority, but it is not binding and conflicts with the overwhelming majority of case law addressing these specific issues.

*ex rel. Colunga v. Hercules Inc.*, No. 89-CV-954 B, 1998 WL 310481, at *3 (D. Utah Mar. 6, 1998).

As discussed in Defendant's initial brief, the harm the legislature intended to protect against – one arising from the failure to provide notice – is apparent from the plain language of the statute. There is nothing on the face of the statute that prohibits an entity from disclosing information insofar as notice is provided. The title of the statute, "*Notice* of Intent to Sell Non-Public Information Act," and the title of the relevant statutory provision, "Disclosure of non-public personal information prohibited *without notice*," highlight the focus on compliance with notice requirements. Utah Code 13-37-101; 13-37-202. Moreover, statements made by the sponsor of the legislation reveal that the purpose of the statute was to require commercial entities to provide notice of an intent to sell information, not to prevent the disclosure itself.[3] As such, because the harm centers on the failure to provide notice and not the disclosure itself, Plaintiff's alleged harm is best compared to an informational injury. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 780 (N.D. Ill. 2020).

Furthermore, Plaintiff contends that Defendant's reliance on *Laufer v. Loope*r to argue that Plaintiff did not suffer a concrete injury sufficient for Article III standing is misplaced, asserting that *Laufer* did not involve an inquiry in to whether the ADA claim had a common law analog. (Opp. at 6-7). Defendant concedes, because she must, that in *Transunion LLC v. Ramirez*, the Supreme Court held that to satisfy Article III standing for an intangible harm, a plaintiff must demonstrate that the alleged harm has a common law analogue. 594 U.S. 413, 414, 141 S. Ct. 2190, 2197, 210 L. Ed. 2d 568 (2021). The Supreme Court in *TransUnion* did not explicitly disturb the line

[3] Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040s01 (Jan. 31, 2003) at 57:50, available at https://le.utah.gov/av/floorArchive.jsp?markerID=12385.

of cases finding standing based on informational injuries, which suggests that in certain circumstances, informational injuries can confer standing if a plaintiff sufficiently alleges downstream consequences. *Id.* at 441-442. *Laufer*, which was post-*TransUnion*, is directly on point because it concerned an alleged injury that was informational by nature. *See* 22 F.4th 871, 881 (10th Cir. 2022). Here, Plaintiff's alleged injury is informational at best, and just like the plaintiff in *Laufer*, Plaintiff is unable to meet Article III standing as Plaintiff has failed to allege any adverse effects resulting from the alleged failure to provide notice under the statute.

Even if this Court were to determine that the harm protected by the statute is the disclosure of information, Plaintiff has failed to allege a common law analogue sufficient for Article III standing, such as the torts of public disclosure of private information and intrusion upon seclusion. Plaintiff contends that the Supreme Court in *TransUnion* identified the type of disclosures alleged here – personal information about consumer purchases – as examples of the harm recognized as providing a basis for Article III standing. (Opp. at 6). This mischaracterizes *TransUnion*. While *TransUnion* acknowledged that the disclosure of certain personal information might constitute a recognized harm, the Supreme Court did not analyze whether the specific information allegedly disclosed here was analogous to a common law tort sufficient for Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. at 425 (2021).

Plaintiff relies on *Curry v. Fields Gifts, Inc.*, *Bohnak v. Marsk & McLennan Co.*, and *Krakauer v. Dish Network, LLC*, seemingly to suggest that Plaintiff's allegations are analogous to the common law tort of public disclosure of private facts sufficient for Article III standing, even if Plaintiff's alleged harm is not an "exact duplicate" or does not necessarily meet each element that would support a cause of action for such tort. (Opp. at 7-8). As a preliminary matter, *Bohnak* and *Krakauer* are not persuasive nor binding. Moreover, respectfully, *Curry* was incorrectly decided

because it placed undue weight on the Supreme Court's statement that a common law analog need not be an exact duplicate to satisfy Article III standing. 2024 WL 3794487, at *3 (D. Utah Aug. 13, 2024). The harm alleged must still be "similar 'in kind, not degree'." *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 828 (10th Cir. 2022). The failure to "allege an element essential to the harm set out in the common law comparator" prevents Plaintiff from relying on such a theory to support Article III standing. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1249 (11th Cir. 2022). Formulating the precise degree of publicity is necessary because "only a person 'who gives publicity to a matter concerning the private life of another' is liable.'" *Id.* at 1246.

Publicity requires that a matter be "made public, by communicating it to the public at large, or to so many persons that the matter be regarded as substantially certain to become one of public knowledge." *Id.* Conclusory allegations that private facts have been made public are insufficient to satisfy the publicity element required for the tort of public disclosure of private facts, as is the case here. *See, for e.g., Hassan v. Facebook, Inc.*, 2019 WL 3302721, at *3 (N.D. Cal. July 23, 2019) (plaintiffs' assertions that Facebook allowed "known and unknown companies" to access their private messages failed to plead the publicity element of the tort of public disclosure of private facts). Additionally, Plaintiff fails to allege that the information disclosed was substantially certain to become public knowledge. Further, as discussed at length in Defendant's brief, Plaintiff's alleged harm is not similar in kind to the common law tort of public disclosure of private facts because Plaintiff's allegations fail to meet the highly offensive element required to establish such a claim.[4]

[4] In a footnote, Plaintiff argues that Defendant's reliance on *Farst v. AutoZone* is misplaced. Defendant cited *Farst* in support of the argument that the information allegedly disclosed by Defendant is not sufficiently private to meet the "highly offensive" standard required for the tort

Plaintiff also attempts to bolster her argument for Article III standing by pointing to cases where courts have upheld standing under the Video Privacy Protection Act ("VPPA"). VPPA is fundamentally different from NISNPIA. Unlike NISNPIA, which is a notice statute, VPPA is concerned with the disclosure of personal information. Indeed, VPPA provides that a video tape service provider is prohibited from disclosing personal information about its consumer to any third party, even in cases where the provider informs the consumer of its disclosure practices.[5] While courts have found standing for claims under disclosure-focused statutes like VPPA, this reasoning is irrelevant when analyzing claims made under NISNPIA.

Furthermore, with respect to the tort of intrusion upon seclusion, Plaintiff's argument overlooks a critical point: the tort does not apply to situations where a plaintiff voluntarily provides the information at issue. *Poncho-Alderete v. United States Gov't*, 2024 WL 2132394, at *16 (D.N.M. May 8, 2024) ("[t]here is no intrusion upon seclusion where plaintiff 'voluntarily acts to bring themselves temporarily out of…seclusion'"); *Smith-Utter v. Kroger Co.*, 2009 WL 790183, at *5 (D. Kan. Mar. 24, 2009) (plaintiff failed to establish a claim for intrusion upon seclusion where plaintiff voluntarily disclosed the alleged private information – a check and driver's license – to the defendant). The example Plaintiff cites – where someone opens another's mail – is

---

of disclosure of private facts. Similarly to *Farst*, where the information allegedly disclosed included plaintiff's shopping habits, Plaintiff claims that Defendant disclosed her non-public information, such as her "purchasing habits and personal preferences." Compl. ¶ 65. Plaintiff also contends that *Low v. Linkedin* is inapplicable because the information disclosed in that case was anonymized. However, in *Low*, the plaintiff argued that third parties could de-anonymize the data by using cookies to connect a user's browser history to a specific individual. 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Even with this possibility, the Court held that the disclosure of a user's browser history did not rise to the level of a serious invasion of a protected privacy interest. *Id.*

[5] *See* 18 U.S.C.A. § 2710. While the statute includes an exception for entities that obtain consent from the consumer, the purpose of the statute is concerned with disclosure, as is apparent from the title of the Act, "Wrongful Disclosure of Video Tape Rental or Sale Records."

fundamentally different from the scenario where a plaintiff willingly shares her information, as Plaintiff did here when she made a purchase from Defendant's website. Comp. ¶ 9.

Accordingly, because Plaintiff does not have Article III standing, this Court lacks subject matter jurisdiction.

**II. The Class Action Bar in NISNPIA is not Preempted by Rule 23, and as a Result, this Court Lacks Subject Matter Jurisdiction**

Plaintiff argues that Rule 23 preempts NISNPIA's class action bar, citing the decision rendered by Judge Parrish in *Curry*. (Opp. at 10). However, Judge Parrish, in concluding that Rule 23 must apply, materially deviated from the framework articulated by Justice Stevens in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co*., which Plaintiff acknowledges in her Opposition should guide this Court's inquiry. (Opp. at 11). As such, *Curry* was wrongly decided, and respectfully, this Court should not follow *Curry*.

As outlined in Defendant's brief, Justice Stevens' concurrence in *Shady Grove* established a two-step approach to determine whether a federal procedural rule preempts a state law. Instead of engaging in the analysis required under Justice Stevens' framework, Judge Parrish adopted an alternative approach. With respect to Step One, Judge Parrish relied on Justice Scalia's plurality opinion and its categorical approach and overlooked the deeper inquiry required under Justice Stevens' Step One analysis. *See Curry v. Mrs. Fields Gifts, Inc.*, 2023 WL 6318108, at *4 (D. Utah Sept. 28, 2023). Notably, other courts that have applied Justice Stevens' Step One framework have determined that no direct collision exists between Rule 23 and state statutes that employ a class action limitation. *Callegari v. Blendtec, Inc*., 2018 WL 5808805, at *4 (D. Utah Nov. 6, 2018); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1254 (D.N.M. 2017).

With respect to Step Two, Judge Parrish looked at each subsection of the statute in isolation and assessed whether the class action bar could be "surgically removed" from the statute without affecting the statute's rights and remedies subsections in order to determine whether the class action bar is substantive. *See Curry* 2023 WL 6318108, at *6-7. Not only does this approach fail to consider the statutory scheme as a whole, as the Court must[6], but most importantly it does not resolve the relevant inquiry outlined in Justice Stevens' framework. When one applies Step Two of Justice Stevens' analysis, it is clear that the class action bar is substantive because it defines the scope of rights and remedies created under NISNPIA. Plaintiff is incorrect that Defendant's liability would not change if actions were brought individually as opposed to a class action. In fact, it would change, as class actions have the ability to consolidate thousands of claims, lessening the requirement for plaintiffs to establish individualized proof, and forcing a defendant to defend a much larger scale litigation with substantial discovery costs and potential for greater damages. This Court should not follow *Curry*, an outlier among many district courts that have been confronted with similar statutes and have determined that class action limitations are substantive and apply in federal court. *See, e.g., Burgos v. Am. Honda Motor Co., Inc.*, 2024 WL 2108843, at *5 Case 4:24-cv-00033-AMA-PK (C.D. Cal. May 7, 2024); *Collins v. Greater Cincinnati Behav. Health Servs.*, 2024 WL 149292, at *3–5 (S.D. Ohio Jan. 12, 2024).

As such, because the class action bar in NISNPIA is not preempted by Rule 23 under *Shady Grove*, the Court must apply it. Consequently, Plaintiff is precluded from bringing a class action, and this Court lacks subject matter jurisdiction for the reasons outlined in Defendant's brief.

[6] *Erlenbaugh v. United States*, 409 U.S. 239, 244, 93 S. Ct. 477, 480, 34 L. Ed. 2d 446 (1972).

**III. Plaintiff Entered into an Enforceable Browsewrap Agreement**

As explained in Defendant's initial brief, Plaintiff entered into an enforceable browsewrap agreement with Defendant. The manner and placement of the Terms of Use hyperlink on Defendant's website put Plaintiff on notice of Defendant's Terms of Use, including the class action waiver and forum selection clause.

Plaintiff argues that the format in which Defendant provided notice of the Terms of Use was insufficient to create an enforceable agreement between the parties. In support of this argument, Plaintiff cites *Koch Indus., Inc. v. Does*, and *Hines v. Overstock.com, Inc*. However, the manner in which the Terms were presented in *Koch* and *Hines* differ from the case at hand. In both *Koch* and *Hines,* the Terms hyperlink was placed on the bottom of the webpage of the websites. *Koch Indus., Inc. v. Does*, 2011 WL 1775765, at *9 (D. Utah May 9, 2011); *Hines v. Overstock.com, Inc*., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009). Here, by contrast, the Terms of Use was placed directly below three different action buttons Plaintiff was required to click on in order to make a purchase. *See* Exhibit B to the Motion to Dismiss or Transfer.

Plaintiff further contends that *Temple v. Best Rate Holdings, LLC,* is inapplicable because it involved a sign-in wrap agreement and the plaintiff was cautioned that by clicking the "Get a Quote" button, the plaintiff was accepting the Terms and Conditions. *Temple* involved what the Court referred to as a hybrid/browsewrap agreement. 360 F. Supp. 3d 1289, 1303 (M.D. Fla. 2018). Moreover, the absence of specific language near the Terms of Use hyperlinks on Defendant's Website is not dispositive of whether Plaintiff had sufficient notice of the agreement. *See, e.g., Derriman v. Mizzen and Main, LLC,* 3d 1129, 1140-1142 (M.D. Fla. 2023) (holding that the placement of the Terms hyperlink near an action button was sufficiently conspicuous to provide

notice of the Terms, even in the absence of language explicitly stating that clicking the button constituted acceptance of the Terms).

Consequently, because Plaintiff entered into an enforceable agreement with Defendant, the class action waiver and forum selection clauses are enforceable.

## CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction because Plaintiff does not have Article III standing and Plaintiff cannot bring this action class action under NISNPIA. Even if this Court concludes that Plaintiff has standing or that Rule 23 preempts the class action bar under NISNPIA, Plaintiff has waived any right to pursue a class action pursuant to Defendant's Terms of Use. Accordingly, this Court must grant Defendant's Motion to Dismiss or Transfer.

**DATED** this 3rd day of December, 2024.

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ *David Garner*
Mark A. Nickel (14082)
David R. Garner (16054)
15 W. South Temple St., Ste. 1600
Salt Lake City, UT 84101
Telephone: (801) 204-9989
mnickel@grsm.com
dgarner@grsm.com

Brian Middlebrook (Pro Hac Vice Admission)
Alexandra Sandler (Pro Hac Vice Admission)
One Battery Park Plaza, 28th Floor
New York, NY 10004
Telephone: (212) 269-5500
bmiddlebrook@grsm.com
asandler@grsm.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of December, 2024, a copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER** was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

*/s/ David R. Garner*