Frank S. Hedin (*Pro Hac Vice*)
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Tyler Somes (*Pro Hac Vice*)
**HEDIN LLP**
1100 15th Street NW, St. 04-108
Washington, DC 20005
Telephone: (202) 900-3332
Facsimile: (305) 200.8801
E-Mail: tsomes@hedinllp.com

David W. Scofield – 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone: (801) 322-2002
Facsimile: (801) 912-0320
E-Mail: dws@psplawyers.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| KRISTEN PILKINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GORSUCH, LTD.<br><br>Defendant. | **PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Case No. 2:24-cv-00434-RJS<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Plaintiff Kirsten Pilkington files this Response to the Order to Show Cause entered by the Court on March 31, 2025, regarding the effect, if any, of the Governor of Utah signing into law Senate Bill 150, which amends Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code § 13-37-101, *et. seq*. ("NISNPIA"), on this proceeding.

## INTRODUCTION

The recent amendments of the NISNPIA signed into law by the Governor of Utah do not affect this court's subject matter jurisdiction over this action. There are at least three reasons for this. First, subject matter jurisdiction is assessed at the time a complaint is filed. Second, the NISNPIA's amended language does not apply retroactively. Third, applying NISNPIA's amended language retroactively would violate the Utah Constitution. As Plaintiff would respectfully show the Court below, this Court retains subject matter jurisdiction over this action.

## BACKGROUND

On March 15, 2003, NISNPIA was signed into law by the Utah Governor. NISNPIA originally took effect on January 1, 2004. *See* Utah Code § 13-37-101. Pursuant to the NISNPIA, "[a] commercial entity may not disclose nonpublic personal information that the commercial entity obtained on or after January 1, 2004, as a result of a consumer transaction if the commercial entity fails to comply with Section 13-37-201." Utah Code Ann. § 13-37-202. Section 13-37-201, in turn, requires a commercial entity to provide the consumer with notice if "the commercial entity enters into a consumer transaction with that person[,]" "as a result of the consumer transaction . . . the commercial entity obtains nonpublic personal information concerning that person[,] and "the commercial entity intends to or wants the ability to disclose the nonpublic personal information . . . to a third party . . . for compensation," where such compensation "is the primary consideration for the commercial entity disclosing the nonpublic personal information," is "directly related to

the commercial entity disclosing the nonpublic personal information," and "is not compensation received by the commercial entity in consideration of a transaction [wherein a third party provides the commercial entity with: "(i) services, including business outsource services; (ii) personal or real property; or (iii) other thing of value"]." *Id.* § 13-37-201(1)(a); § 13-37-201(5). The notice "shall be given before the earlier of . . . the point at which the person is requested to provide the nonpublic personal information[,] or . . . the commercial entity otherwise obtains the nonpublic personal information as a result of the consumer transaction[.]" *Id.* § 13-37-201(2).[1]

On June 14, 2024, Plaintiff commenced this putative class action against Defendant for violating NISNPIA by selling Plaintiffs' nonpublic personal information to third parties. ECF No. 1. On October 4, 2024, Defendant moved to dismiss this case on, *inter alia*, the ground that NISNPIA expressly prohibits class actions, *see* Utah Code Ann. § 13-37-203(3), and that Plaintiffs were thus unable to invoke CAFA jurisdiction. ECF No. 17. On November 12, 2024, Plaintiff filed a response in opposition to the motion and oral argument. ECF No. 27. On December 16, 2024, Plaintiff filed a Notice of Supplemental Authority regarding *Arnstein et. al. v. Sundance Holdings Group, L.L.C.*, 2:24-cv0344-RJS-DAO, ECF No. 36) 2024 U.S. Dist. LEXIS 215328 *; 2024 WL 4882857 (D. Utah Nov. 25, 2025) (C.J. Shelby) (mem. op.), wherein this Court declined to dismiss NISNPIA claims analogous to the ones asserted here for lack of subject matter jurisdiction. *See* ECF No. 31. A hearing on Defendant's motion to dismiss is currently scheduled for May 28, 2025. ECF No. 38.

[1] The notice required by section 13-37-201 "shall read substantially as follows: 'We may choose to disclose nonpublic personal information about you, the consumer, to a third party for compensation." *Id.* § 13-37-201(3)(a). The notice may be provided either "orally, if the consumer transaction itself is entirely conducted orally[,] or . . . in writing, if the notice is written in dark bold." *Id.* § 13-37-201(3)(b). In either case, the notice "shall be sufficiently conspicuous so that a reasonable person would perceive the notice before providing the nonpublic personal information." *Id.* § 13-37-201(3)(c) (emphasis added).

On January 22, 2025, Senator Kirk Cullimore of the Utah Senate introduced S.B. 150. On January 24, 2025, the Utah Legislature's Office of the Legislative Fiscal Analyst issued Fiscal Note on S.B. 150, finding that the bill, if enacted and signed into law, would have no fiscal impact on Utah governments, residents, or businesses. The bill was subsequently referred to the Senate Judiciary, Law Enforcement, and Criminal Justice Committee. On January 31, 2025, Senator Cullimore spoke about the bill at a hearing before the Senate Judiciary, Law Enforcement, and Criminal Justice Committee, stating in pertinent part, that "because the [NISNPIA] has the bar to class actions as a separate sub-section it was deemed to be a severable procedural right for federal court purposes and not a substantive right as found in the remedies." Statement of Sen. Kirk A. Cullimore, *Tr. of Utah Leg. Procs.*, 3:25-4:04 (attached hereto as **Exhibit A**). Without any discussion or questions concerning the bill, the Senate Judiciary, Law Enforcement, and Criminal Justice Committee gave the bill a favorable recommendation and sent it to the full Utah Senate for a vote. Before senators voted on the bill, Senator and Chairman of the Senate Judiciary, Law Enforcement, and Criminal Justice Committee Todd D. Weiler spoke in favor of the bill, stating, in pertinent part, that "I'm a lawyer and a partner at a law firm here in Utah. If this bill passes, it could arguably benefit my law firm and I think that's a good thing." Ex. A, Statement of Sen. Weiler, *Tr. of Utah Leg. Procs.*, 4:15-4:18. S.B. 150 passed the Utah Senate by unanimous vote.

Meanwhile, on February 13, 2025, Representative Anthony Loubet introduced S.B. 150 in the Utah House of Representatives. The bill was subsequently referred to the House Judiciary Committee. On March 10, 2025, Representative Loubet spoke about the bill at a hearing before the House Judiciary Committee, stating in pertinent part, that "this bill is clarifying that [NISNPIA's class action bar] is a substantive right and not a procedure and it's not procedural in nature." Ex. A, Statement of Rep. Loubet, *Tr. of Utah Leg. Procs.*, 15:6-15:8. Without any

discussion or questions concerning the bill, the House Judiciary Committee gave the bill a favorable recommendation and sent it back to the Utah House of Representatives for a vote. Additionally, a single industry advocate, Dave Davis of the Utah Retail Merchants Association, gave a brief endorsement of S.B. 150 before the House Judiciary Committee. S.B. 150 passed the Utah House of Representatives by unanimous vote.

On March 13, 2025, S.B. 150 was sent to the Governor of Utah for signature. On March 27, 2025, the Governor of Utah signed into law S.B. 150, which by its own terms "takes effect on May 7, 2025." *See* Nonpublic Personal Information Amendments, S.B. 150, 2025 Gen. Sess. (Utah 2025) ("S.B. 150"), available at https://le.utah.gov/~2025/bills/static/SB0150.html (hereinafter, the "Amendment") (a copy of which is attached hereto as **Exhibit B)** (setting May 7, 2025 as the forward-looking "Effective Date" for the Amendment). The Amendment modifies the original statute in the following ways:

**(1)** The Amendment changes the definition of "commercial entity" found in section 102(2)(a) of the statute, in the manner reflected below:

> (2) (a) Subject to Subsection (2)(b), "commercial entity" means a person that:
> ~~(i) has an office or other place of business located in the state; and~~
> ~~(ii) in the ordinary course of business transacts a consumer transaction in this state.~~
> (i) maintains a physical office in the state; and
> (ii) in the ordinary course transacts business at the physical office with consumers located in the state.

The Amendment contains nothing to indicate that this change is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(2)** The Amendment adds the following definition for the term "physical office," which appears as follows in section 102(6) of the amended statute:

> (6) (a) "Physical office" means a location:
> (i) accessible to the public during normal business hours;
> (ii) staffed by one or more individuals who conduct business on behalf of the commercial entity; and
> (iii) used for the primary purpose of transacting business with consumers in the state.
> (b) "Physical office" does not include a post office box, mailing address, registered agent, or virtual office that a person solely relies on for business correspondence.

The Amendment contains nothing to indicate that this addition is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(3)** The Amendment adds the following provision containing a limitation period for bringing claims:

> (3) An action for a violation of this chapter may only be brought in accordance with Section 78B-2-302 within one year from the day of the consumer transaction at issue.

The Amendment contains nothing to indicate that this addition is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(4)** The Amendment deletes the following provision barring class actions found in section 203(3) of the original statute:

> ~~(3) A person may not bring a class action under this chapter.~~

The Amendment contains nothing to indicate that this deletion is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(5)** The Amendment adds new class-action barring language throughout sections 203(1) and 203(2) of the statute, in the manner reflected below:

> (1) ~~A~~ As a person's only remedy under this chapter, a person may bring an individual action, not a class action or act in a representative capacity, against a commercial entity in a ~~court of competent jurisdiction in this state~~federal or state court with jurisdiction if:
>
> (a) the commercial entity enters into a consumer transaction with that person;
>
> (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and
>
> (c) the commercial entity violates this chapter.
>
> (2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person individually, but not to a class or to a person in a representative capacity, who brings the action for:
>
> (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and
>
> (b) court costs.

The Amendment contains nothing to indicate that these additions are intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(6)** The Amendment adds the following statement concerning "the prohibition on bringing a

class action" in section 203(4) of the amended statute:

> (4) The Legislature finds that since January 1, 2004, the prohibition on bringing a class action is a remedy provision and not merely procedural.

The Amendment contains nothing to indicate that this addition is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

On March 31, 2025, the Court ordered the parties to address the effect, if any, of certain recent amendments to the NISNPIA on the Court's subject matter jurisdiction over this action. ECF No. 40.

## ARGUMENT

The NISNPIA Amendments do not affect the Court's subject matter jurisdiction over this action. There are at least three reasons for this. First, subject matter jurisdiction vests at the time a complaint is filed. "[I]f jurisdiction exists at the time an action is commenced, such jurisdiction *may not be divested by subsequent events*." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (emphasis added). Second, the NISNPIA Amendments operate only prospectively. They do not contain an express declaration of retroactivity, as required to overcome the presumption that provisions of the Utah Code operate prospectively. *See* Utah Code Ann. § 68-3-3 (2010). Third, applying the NISNPIA Amendments retroactively would violate the Utah Constitution. For these three reasons, the Court retains subject matter jurisdiction over this action.

### I. Subject Matter Jurisdiction Vested in this Court When the Complaint Was Filed

It is a "well-established rule that diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc.*, 498 U.S. at 428. As the Supreme Court has "consistently held . . . if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Id.*

The Class Action Fairness Action ("CAFA") provides original diversity jurisdiction over this action. *See Arnstein v. Sundance Holdings Grp., LLC*, No. 2:24-CV-00344-RJS-DAO, 2024 WL 4882857, at *2 (D. Utah Nov. 25, 2024) (answering affirmatively the question of "whether Plaintiffs may . . . establish diversity jurisdiction under CAFA . . . .") (ECF No. 36); *see also In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) (per curiam) ("CAFA is, at base, an extension of diversity jurisdiction."). Given this Court's previous finding that diversity jurisdiction exists over this action, no "subsequent event" may deprive it of subject matter jurisdiction. *See Freeport-McMoRan, Inc.*, 498 U.S. at 428. This remains true regardless of whether the NISNPIA Amendments operate retroactively or prospectively, which is a question better suited for the class certification stage. *See Gallivan v. Walker*, 54 P.3d 1069, 1100 (2002) (Durham, C.J., concurring) ("[C]ourts should generally resolve cases on the narrowest applicable grounds unless specific reasons exist for offering broader guidance.").

Courts are unified in their understanding that subject matter jurisdiction vests when a complaint is filed. As this Court wrote in *Pontrelli v. MonaVie, Inc.*, "the appropriate inquiry is whether jurisdiction existed at the time the case was *filed* as a class action." No. 2:17-CV-01215-DN-DBP, 2019 WL 2436437, at *2 (D. Utah June 11, 2019) (emphasis in original). While the Tenth Circuit has not directly addressed this issue, this Court concluded in *Pontrelli* that the Tenth Circuit would likely join the unanimous position of the circuit courts which have addressed the issue by finding that subject matter jurisdiction under CAFA is determined based upon the time the complaint is filed. For example, in *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, the Fifth Circuit wrote: "[e]very circuit that has addressed the question has held that post-removal events do not oust CAFA jurisdiction." 746 F.3d 633, 639 (5th Cir. 2014) (collecting cases from the Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits). The Second Circuit has held that "jurisdiction

under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations." *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015). And in *Wright Transportation, Inc. v. Pilot Corp.*, the Eleventh Circuit assessed whether a case originally filed in federal court under CAFA, as opposed to a removed case, compelled a different result—and concluded that it did not. 841 F.3d 1266, 1271 (11th Cir. 2016) ("When the post-filing action that did away with the class claims is not an amendment to the complaint, we see no basis for distinguishing cases originally filed in federal court under CAFA from those removed to federal court. We therefore conclude that CAFA continues to confer original federal jurisdiction over the remaining state-law claims in this suit."). As the Eleventh Circuit summarized, "CAFA jurisdiction is not easily defeated." *Id.*

This Court retains subject matter jurisdiction over this action because it had diversity jurisdiction under CAFA when the complaint was filed.

## II. The NISNPIA Amendments Do Not Operate Retroactively

The Court need not reach the question of whether the NISNPIA Amendments operate retroactively because it is clear that the Court had subject matter jurisdiction over this action at the time the complaint was filed—and that jurisdiction cannot be divested through the operation of subsequent events. *See Freeport-McMoRan, Inc.*, 498 U.S. at 428. However, if the Court does reach the retroactivity issue it should hold that the NISNPIA Amendments do not apply retroactively. The Court retains subject matter jurisdiction on this alternative grounds.

* * * * *

Prospective application of the law is foundational to the American legal system. As stated by the United States Supreme Court, the "presumption against retroactive legislation . . . . embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244,

266 (1994). "The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.*[2]

Accordingly, "retroactive application of a law is highly disfavored." *Evans v. Utah*, 21 F. Supp. 3d 1192, 1204 (D. Utah 2014). In Utah, there is a "strong presumption" against retroactive application of law. *See id.* Overcoming this presumption requires either (1) an express declaration from the Legislature that a law operates retroactively or (2) that a statute operate purely procedurally. *Id.* Since neither condition is met with respect to the NISNPIA Amendments, they can only operate prospectively, and they therefore have no effect on the Court's jurisdiction over Plaintiff's claim asserted in this litigation.

The NISNPIA Amendments do not affect the Court's subject matter jurisdiction over this action because they operate only prospectively. The NISNPIA Amendments do not contain an express declaration that they apply retroactively, as is required to overcome the default rule that substantive provisions of the Utah Code operate only prospectively. *See* Utah Code Ann. § 68-3-3 (2010). On the contrary, the NISNPIA Amendments indicate that they operate only prospectively. Since Plaintiff's claims accrued before the effective date of the NISNPIA Amendments, the Court retains subject matter jurisdiction over this action.

**A. Overview of Retroactivity Jurisprudence in Utah**

Consistent with most jurisdictions in the United States, statutes in Utah generally do not operate retroactively. In Utah, "a court will and ought to struggle hard against a construction which

[2] Thomas Jefferson once wrote: "The sentiment that *ex post facto* laws are against natural right, is so strong in the United States, that few, if any, of the State constitutions have failed to proscribe them. The federal constitution indeed interdicts them in criminal cases only; but they are equally unjust in civil as in criminal cases, and the omission of a caution which would have been right, does not justify the doing what is wrong." Letter to Isaac McPherson (1813), *The Writings of Thomas Jefferson*, Volumes 13-14, p. 327.

will, by retrospective operation, affect the rights of parties." *Thomas v. Color Country Mgmt.*, 84 P.3d 1201, 1210 (Utah 2004) (Durham, C.J., concurring).

As the Utah Supreme Court has observed "[t]he courts of this state operate under a statutory bar against the retroactive application of newly codified laws." *See State v. Clark*, 251 P.3d 829, 833 (Utah 2013). This statutory bar appears in Title 68 ("Statutes"), Chapter 3 ("Construction") of the Utah Code. Section 3, entitled "Retroactive Effect," provides "A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." Utah Code Ann. § 68-3-3 (2010). This provision creates a default rule that Utah laws do not apply retroactively. *See id.*; *see also Clark*, 251 P.3d at 833.

There are two exceptions to Utah's rule against retroactivity. First, a statute may operate retroactively where it is "expressly declared to be retroactive" by the Legislature. This exception is codified at Utah Code Ann. § 68-3-3 (2010). Such an express declaration may only be established through "explicit statements that the statute should be applied retroactively, or by clear and unavoidable implication that the statute operates on events already past." *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997). Ambiguous or unclear language which merely suggests retroactivity does not meet this standard. *See, e.g.*, *Harvey v. Cedar Hills City*, 227 P.3d 256, 259 (Utah 2010) ("We have previously observed that exceptions to this general rule are rare."); *Campbell v. Stagg*, 596 P.2d 1037, 1042 (Utah 1979) (holding that "interest on that amount calculated . . . from the date of the occurrence of the act giving rise to the cause of action to the date of entering the judgment" is not an "express" declaration of retroactive intent).

Second, purely procedural statutes are accorded retroactive effect. This is a judicially created exception. "With respect to procedural statutes enacted subsequent to the initiation of a

suit, on the other hand, we have held that the new law applies not only to future actions, but also to accrued and pending actions, and that further proceedings in a pending case are governed by the new [procedural] law." *Clark*, 251 P.3d at 829 (internal citations and quotation marks omitted); *see also Pilcher v. State*, 663 P.2d 450, 455 (Utah 1983). This exception is "narrowly construed" to permit retroactivity "where a statute changes only procedural law by providing a different mode or form of procedure for enforcing substantive rights[.]" *Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah 1995) (internal quotation marks omitted). Utah courts are clear that this exception does not apply "when a statute enlarges, eliminates, or destroys vested or contractual rights." *Id.* (citing *Board of Equalization v. Utah State Tax Comm'n ex rel. Benchmark, Inc.*, 864 P.2d 882, 884 (Utah 1993)). Substantive laws, therefore, may only operate retroactively through the statutory "expressly declared" exception. *See Waddoups v. Noorda*, 321 P.3d 1108, 1112 (2013).

When the Legislature acts merely to 'clarify' an existing statute, that is not enough to overcome the presumption against retroactivity. Previous opinions suggesting that clarifying amendments could support retroactive effect applied only to procedural statutes. *See Gressman v. State*, 323 P.3d 998, 1003 (Utah 2013). Any vestige of a 'clarifying' exception to the rule against retroactivity has been expressly abrogated by the Utah Supreme Court. *See id.* ("Though our case law has occasionally referred to 'amendments clarifying statutes' as an 'exception' to the retroactivity ban, we have never applied them as such. Instead, our retroactivity case law has invoked this exception only in connection with statutory amendments that we have characterized as procedural. And when our cases discuss the 'clarifying amendment exception,' it is always in tandem with or as a counterpart to our analysis of the above-noted distinction between substance and procedure. That limitation is entirely appropriate.") (internal citations and quotation marks

omitted). There remains no 'clarifying amendment' exception to the rule against retroactivity. *See Waddoups*, 321 P.3d at 1112.

**B. The NISNPIA Amendments Do Not Contain an Express Declaration of Retroactivity**

The NISNPIA Amendments do not operate retroactively because the Legislature has not "expressly declared" that they are retroactive. *See* Utah Code Ann. § 68-3-3 (2010).

The Legislature has not "expressly declared" that they NISNPIA Amendments are retroactive. *See* Utah Code Ann. § 68-3-3 (2010). Defendant may attempt to argue otherwise based upon the statement: "The Legislature finds that since January 1, 2004, the prohibition on bringing a class action is a remedy provision and not merely procedural." *See* S.B. 150, Section 2(4). But this falls far short of an express declaration of retroactivity. First, the plain meaning of this statement's language dispels any construction as an express declaration of retroactivity. It never speaks to the *effect* of the finding it embodies—unlike the many express declarations of retroactivity previously made by the Legislature. Second, the NISNPIA Amendments contain a forward effective date, which courts have held indicates prospective effect. Third, the NISNPIA Amendments speak in the present tense, indicating that they do not apply retroactively.

*First*, the plain meaning of the NISNPIA Amendments indicate that they do not apply retroactively. Utah Legislature knows well how to "expressly declare" retroactivity. *See* Utah Code Ann. § 68-3-3 (2010). The only phrase included in the NISNPIA Amendments which could even arguably indicate retroactive effect, "The Legislature finds that since January 1, 2004, the prohibition on bringing a class action is a remedy provision and not merely procedural," does not meet high bar to overcome the presumption against retroactivity. *See* S.B. 150, Section 2(4); *Evans*, 21 F. Supp. 3d at 1205 ("Utah law has a strong presumption against retroactive application of laws."). That sentence does not say anything about the NISNPIA Amendments having

retroactive effect on claims which have already accrued—and it certainly does not do so "expressly." *See* Utah Code Ann. § 68-3-3 (2010).

When the Legislature expressly declares retroactivity, it does so unambiguously. It often includes a separate section addressing retroactivity in the relevant legislation. For example, the Hazardous Substances Mitigation Act includes a section entitled "Retroactive effect." Utah Code Ann. § 19-6-3-302.5 (attached hereto as **Exhibit C**). This section provides, *inter alia*: "It is the intent of the Legislature that liability as determined under this act applies retroactively." Utah Code Ann. § 19-6-3-302.5(3)(a). Many other laws contain similar sections which clearly, expressly, and separately address retroactivity. *See, e.g.*, Underground Storage Tank Act, Utah Code Ann. § 19-6-4-402.5 (section entitled "Retroactive effect") (attached hereto as **Exhibit D**); Postconviction Remedies Act, Utah Code Ann. § 78B-9-1-104 (section entitled "Grounds for relief – Retroactivity of rule") (attached hereto as **Exhibit E**).

In other instances, the Utah Legislature has "expressly declared" that a law is retroactive through "explicit statements" or "clear and unavoidable implication[s]" of retroactivity. Utah Code Ann. § 68-3-3 (2010); *Evans & Sutherland Computer Corp.*, 953 P.2d at 437. For example, a provision of the Probate Code permitting courts to modify the terms of a trust to achieve the settlor's tax objectives, provides that "[t]he court may provide that the modification has *retroactive effect*." Utah Code Ann. § 75-7-416 (attached hereto as **Exhibit F**) (emphasis added). Similarly, the Utah Supreme Court found that the following statutory language "expressly declared" retroactive effect: "The provisions of this section apply to any claim under this section for which a court of competent jurisdiction has not issued a final unappealable judgment or order." *Wasatch Cnty. v. Okelberry*, 357 P.3d 586, 590–91 (Utah 2015). These are the types of unambiguous declarations meet the high threshold of the statutory exception.

Where language is ambiguous, courts do not accord a statute retroactive effect. *See Thomas v. Color Country Mgmt.*, 84 P.3d 1201, 1211 (Utah 2004) (C.J. Durham, concurring) ("We should fall back on our general rule against retroactive application when the presumption of substantiveness is not clearly rebutted. In other words, when in doubt, we should find that the statute is substantive."). For example, the marriage ban statute this Court considered in *Evans* could only be ambiguously considered to evince retroactive intent. 21 F. Supp. 3d at 1205. The statute provided that marriages "between persons of the same sex" "are prohibited and declared void." *Evans*, 21 F. Supp. 3d at 1205. Despite the potential to read that language as retroactively voiding same-sex marriages, this Court found that since the plaintiffs' "marriages were authorized by law at the time they occurred", they remained valid because the law did not "expressly declare[]" that the statute applies retroactively. *See id.* So, too, here. The NISNPIA Amendments simply do not contain any declaration of retroactive effect—much less a declaration stated "expressly" such that it meets the demanding standard of the statutory exception.

*Second*, the NISNPIA Amendments contain a forward effective date. This indicates prospective intent and fatally undermines any claim of retroactivity. Section 3 of the NISNPIA Amendments is entitled "Effective Date." *See* S.B. 150, Section 3. It provides: "This bill takes effect on May 7, 2025." *Id.* Given the forward effective date, the NISNPIA Amendments were not "expressly declared" by the Legislature to be retroactive. *See* Utah Code Ann. § 68-3-3 (2010).

The Utah Supreme Court has held that a forward effective date indicates that the Legislature does not intend a statute to operate retroactively. For example, in *Stephens v. Henderson*, 741 P.2d 952, 955 (Utah 1987) the Court held that the Liability Reform Act, eliminating joint and several liability, could not be applied retroactively given its forward effective date. The Court wrote that a "statute eliminating joint and several liability may not be applied to

injuries occurring prior to its effective date." *Id.* The Court specifically considered and rejected an argument that the law should apply retroactively. *Id.* at 954-55. It progressed through the retroactivity analysis step-by-step, beginning with the statutory bar, moving through considerations of whether the law is substantive or procedural, and finally turning away a novel argument that there is no retroactive effect if a new statute takes effect before judgment is entered in a case. *Id.*; *see also Brunyer v. Salt Lake County*, 551 P.2d 521, 522 (Utah 1976) (Comparative Negligence Act could not apply to claims arising before its effective date); *Payne By & Through Payne v. Myers*, 743 P.2d 186, 190 (Utah 1987) (a forward effective date indicated that the law applied only to action commenced after that date). Courts from other jurisdictions agree. *See, e.g.*, *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) ("The new PPPA does not contain any express statement of intended retroactivity (in fact, it contains a future 'effective date') . . . Consequently, the amendment is not actually remedial and is not retroactive.").

*Third*, the NISNPIA Amendments speak in the present tense. This undermines any claim of retroactivity. In *Waddoups*, the Utah Supreme Court stated: "It simply cannot be said that the use of the present tense communicates a clear and unavoidable implication that the statute operates on events already past. If anything, *use of the present tense implies an intent that the statute apply to the present, as of its effective date, and continuing forward*." 321 P.3d at 1112 (emphasis added). Here, as in *Whaddoups*, essentially all the new statutory language speaks in the present tense. This includes the phrases:

- "*maintains* a physical office in the state";
- "in the ordinary course *transacts* business at the physical office with consumers located in the state";

- "An action for a violation of this statute *may only be brought* in accordance with Section 78B-2-302 within one year from the day of the consumer transaction at issue";

- "The Legislature *finds* that since January 1, 2004, the prohibition on bringing a class action *is* a remedy provision and not merely procedural."

S.B. 150 (emphasis added). None of the language in the NISNPIA Amendments speaks in the past tense, as would evidence an intent for the statute to operate on events already past.

This Court has previously found that a statute's use of the present tense precludes retroactive effect. In *Evans*, this Court wrote that "The use of the present tense in these same-sex marriage bans indicates that the bans do not apply retroactively." 21 F. Supp. 3d at 1205; *see also Strauss v. Horton*, 46 Cal.4th 364, 93 Cal. Rptr. 3d 591, 207 P.3d 48 (2009) (holding that a California statute written in the present tense does not apply retroactively). In *Evans*, this Court continued: "the use of present and future tenses in Utah's marriage bans does not provide a 'clear and unavoidable' implication that they 'operate on events already past.'" 21 F. Supp. 3d at 1205 (quoting *Waddoups*, 321 P.3d at 1112). The very same result should hold here.

For the three reasons stated above, the NISNPIA Amendments do not contain an express declaration of retroactivity. Therefore, the NISNPIA Amendments cannot satisfy the statutory exception to the rule that Utah statutes operate prospectively. The Court retains subject matter jurisdiction over this action because Plaintiff's claim must be adjudicated under the version of the NISNPIA which was in effect when it accrued.

### C. The NISNPIA Amendments Do Not Operate Retroactively Because They Alter Substantive Rights

The NISNPIA Amendments operate prospectively because they alter substantive rights.

The second exception to Utah's rule against retroactivity holds that procedural statutes may be accorded retroactive effect. *Clark*, 251 P.3d at 829; *Pilcher*, 663 P.2d at 455. A corollary to

this rule is that substantive statutes may only apply retroactively when they meet the "expressly declared" standard of the statutory exception. *See* Utah Code Ann. § 68-3-3 (2010)*; Waddoups*, 321 P.3d at 1112. The 'purely procedural' exception is "narrowly construed" to permit retroactivity "where a statute changes only procedural law by providing a different mode or form of procedure for enforcing substantive rights[.]" *Roark*, 893 P.2d at 1062. Utah courts presume that "when the legislature amends a statute, it intended the amendment to change existing legal rights." *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 261 (Utah 1998) (cleaned up). In assessing the substantive or procedural nature of a law, courts "look[] beyond" a statute's "superficial procedural character" and apply a "common sense, functional judgment . . . guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Thomas*, 84 P.3d at 121 (citing *Martin v. Hadix*, 527 U.S. 343, 357–58 (1999)).

The NISNPIA Amendments are substantive, not procedural. The Legislature's purpose in passing the NISNPIA Amendments was to make the NISNPIA's class action bar a substantive right. *See* Statement of Sen. Kirk A. Cullimore, *Tr. of Utah Leg. Procs.*, 4:9-4:12 (attached hereto as **Exhibit F**) ("all this bill does, SB150, is it simply puts the bar to class actions as a substantive right in the law . . . ."). To accomplish this, the NISNPIA Amendments move the class action bar from its own sub-section into the sub-sections establishing remedies. *See* S.B. 150 (Ex. A); *see* Statement of Sen. Cullimore, *Tr. of Utah Leg. Procs.*, 10:19-10:2 (Ex. F) ("But because the bar to class action in this [*sic*] was a different subsection, the federal courts in Utah have determined that this is a procedural bar to class actions and not a substantive right. And so what the attorneys have asked for is to move this bar to class action . . . so that it is recognized [] as a substantive right . . . ."). The NISNPIA Amendments indisputably intended to change the class action bar from a procedural rule to a substantive right. *See* S.B. 150, Section 2(4).

Other characteristics of the NISNPIA Amendments indicate that they are substantive. For example, they change the definition of "commercial entity" and add a definition of "physical office." *See* S.B. 150. This affects who may be liable under the NISNPIA and, since these changes are restrictive, presents a new defense for future defendants. *See Washington Nat. Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 669–70 (Utah Ct. App. 1990) ("A change in a statutory remedy or defense is a substantive change if it affects the rights and duties of the parties."). The NISNPIA Amendments also introduce a one-year statute of limitations, which is well-established in Utah jurisprudence as a substantive change. *See* S.B. 150; *Roark*, 893 P.2d at 1061 (holding that a change to a statute of limitations is substantive); *see also State v. Apotex Corp.*, 282 P.3d 66, 81 (2012) (holding that the introduction of a limitations period where there was none before is substantive).

In sum, the NISNPIA Amendments are substantive changes. They affect "the relationship between the parties" because they "create[], define[] and regulate[] the rights and duties of the parties." *Stephens v. Henderson*, 741 P.2d 952, 953–54 (Utah 1987) (internal citations and quotation marks omitted). As a result, the 'purely procedural' exception to the general rule of prospective effect of the law does not apply. The NISNPIA Amendments apply only prospectively and they have no effect on this Court's subject matter jurisdiction over Plaintiff's claim.

### D. The NISNPIA Amendments Cannot Apply Retroactively By Virtue of Clarifying of an Existing Statute

Defendant argues that "Utah's other exception to the general ban on retroactivity . . . allows retroactive application 'when the purpose of the amendment is to clarify the meaning of an earlier enactment.'" *See* ECF No. 45 at 8 (quoting *Clark*, 251 P.3d at 833). But Defendant's reliance on the Legislature's intent to clarify existing law is badly misplaced. As the Supreme Court of Utah

expressly held in *Gressman*, the clarifying intent of legislative amendments has absolutely **no effect** on the retroactivity analysis. *See* 323 P.3d at 1003; *see also Waddoups*, 321 P.3d at 1112.

Defendant relies heavily on its argument that "the amendment was designed to clarify that the class action prohibition is, and has always been, a substantive provision." ECF No. 45 at 8. But the Utah Supreme Court has been crystal clear on this point. A statute may not be given retroactive effect simply because it 'clarifies' the Legislature's understanding of an existing law. In *Gressman*, the Court acknowledged that "our case law has occasionally referred to 'amendments clarifying statutes' as an 'exception' to the retroactivity ban . . . ." 323 P.3d at 1003. However, it wrote that "we have never applied them as such." *Id*. The Court continued:

> Instead, our retroactivity case law has invoked this exception *only in connection with statutory amendments that we have characterized as procedural*. . . . The governing statute, after all, makes no express room for an exception for clarifying amendments per se. The sole exception spelled out explicitly by statute requires an express provision for retroactivity.

*Id.* (emphasis added). In a later case, the Utah Supreme Court expressly characterized this passage in *Gressman* as having "repudiated" the purported "clarifying amendment" exception. *See Waddoups*, 321 P.3d at 1112. Defendant's reliance on the "clarifying amendments" rationale is based on an expressly abrogated doctrine and cannot compel a retroactive application of the NISNPIA Amendments.

### III. Applying the NISNPIA Amendments Retroactively Would Divest Plaintiff and the Putative Class Members of "Vested Rights" in Violation of the Utah Constitution

Even if the NISNPIA Amendments are retroactive—which, to be clear, they are not—the NISNPIA Amendments may not be applied retroactively to this action because doing so would divest Plaintiff and the putative class members of "vested rights" in violation of the Utah Constitution.

The "vested rights" limitation on the legislative power is "firmly rooted" in Utah's constitutional jurisprudence. *Mitchell v. Roberts*, 469 P.3d 901, 909 (Utah 2020). The Utah Supreme Court has held that "a vested right of action is a property right protected by the due process clause." *Payne By & Through Payne*, 743 P.2d at 190. It has explained:

> once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment.

*Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 676 (Utah 1985); *see also Spanish Fork Westfield Irrigation Co. v. District Court of Salt Lake County*, 104 P.2d 353, 360 (Utah 1940). The Legislature may not, consistent with the Utah Constitution, retroactively divest individuals of such "vested rights," including causes of action which have accrued. *See Evans*, 21 F. Supp. 3d at 1206.

Such unconstitutional divesture would precisely be the case here if the NISNPIA Amendments applied retroactively. As shown above, the NISNPIA Amendments are substantive. They limit the definition of a "commercial entity" who may be sued. SB 150. They impose a new, limiting definition of "physical office." *Id.* They create a new, one-year statute of limitations. *Id.* They change the class action bar from a procedural to substantive provision. *Id.* Each of these changes has the potential to "enlarge[], eliminate[] or destroy[] vested or contractual rights" enjoyed by Plaintiff and the putative class members when their causes of action accrued. *See Roark*, 893 P.2d at 1062-63 (Utah 1995) (holding that changes to a statute of limited affected vested substantive rights and therefore could not be applied retroactively).[3]

[3] Defendant's citations to decisions interpreting the United States Constitution and its due process protections do not address this argument, which concerns the Utah Constitution. *See* ECF No. 45 at 8-9.

Plaintiff's cause of action accrued before the NISNPIA Amendments' effective date. As alleged in the Complaint, the claim accrued when Defendant allegedly sold or otherwise disclosed Plaintiff's nonpublic personal information in exchange for compensation or benefit to itself without providing the disclosure required by NISNPIA. *See* ECF No. 1. This necessarily occurred prior to the date Plaintiff filed the Complaint. *See id.* It certainly occurred prior to the effective date of the NISNPIA Amendments. *See id.* Plaintiff therefore possessed a "vested right" in the cause of action she asserts in this proceeding—and that right is constitutionally protected from retroactive abrogation by the Legislature. *See Payne By & Through Payne*, 743 P.2d at 190; *Berry*, 717 P.2d at 676; *see also Stephens v. Henderson*, 741 P.2d 952, 953–54 (Utah 1987) (". . . cases which hold that a statutorily created right can be destroyed at any time until final judgment because the right has not yet vested, are in error. To allow the substantive law in a case to be changed at any time up until entry of final judgment would allow a plaintiff to be effectively deprived of a cause of action.").

The Utah Supreme Court's opinion in *Olsen v. Samuel McIntyre Inv. Co.* is instructive. 956 P.2d 257 (Utah 1998). Like this case, *Olsen* concerned a cause of action which arose in part due to the defendant's failure to provide a statutorily required notice. Gregory Olsen worked for Samuel McIntyre Investment Company. *Id.* at 258. In 1993, Mr. Olsen's employer provided written notice to the Workers' Compensation Fund of Utah, its insurance carrier, of its intent to exclude him as an employee for workers' compensation purposes. *Id.* Mr. Olsen then perished in an automobile accident while on the job in 1994. *Id.* Following Mr. Olsen's death, his widow applied for workers compensation death benefits pursuant to a statutory provision of the Utah Code. *Id.*

The workers' compensation claim was initially denied based on the company's exclusion of Mr. Olsen from its policy. *Id*. at 259. Mrs. Olsen sought review, however, and an administrative law judge found in her favor because Section 35–1–43(3)(b) of the Utah Code required the corporation to give separate written notice of the exclusion to both the Workers' Compensation Fund of Utah and the Industrial Commission, but the corporation had only provided written notice to the former, not the latter. *Id*. On further appeal, the Utah Court of Appeals upheld the administrative law judge's opinion. *Id*. In doing so, it refused to retroactively apply an amended version of Section 35–1–43, which eliminated the requirement that an employer separately provide written notice of exclusions to the Industrial Commission. *Id*.

The Utah Supreme Court held that the revised Section 35–1–43 did not apply retroactively. *Id*. at 261. It determined that the amendments were substantive, not procedural, because they "created and regulated the rights and duties of the parties." *Id*. It found that "[a]pplying the less rigorous notice requirements of the amended statute would alter Mrs. Olsen's and her children's rights as dependents." *Id*. It held that the Mrs. Olsen's statutory rights and cause of action "vested" when her husband died. *Id*. Finally, it held that "Retroactive application of the amended version of section 35–1–43 would operate to eliminate the vested right." *Id*.

Plaintiff and the putative class members have vested property rights in their causes of action which accrued before the effective date of the NISNPIA Amendments. Applying the NISNPIA Amendments retroactively would divest Plaintiff and the putative class members of these vested rights. Such a retroactive divestment of their vested rights if prohibited by the Utah Constitution. As a result of this constitutional protection, the NISNPIA Amendments cannot operate retroactively to deprive this Court of subject matter jurisdiction.

## CONCLUSION

Based on the above, this Court retains subject matter jurisdiction over Plaintiff's claims and the NISNPIA Amendments have no effect on this action to the extent is seeks redress for claims accruing before the effective date of the NISNPIA Amendments.

Dated: April 26, 2025 Respectfully submitted,

**PETERS | SCOFIELD**

/s/ David W. Scofield (4140)

DAVID W. SCHOFIELD

*Counsel for Plaintiff and Putative Class*