IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KRISTIN PILKINGTON, individually and on behalf of all others similarly situated, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | Case No. 2:24-cv-00434-RJS-DPB |
| v. | Chief District Judge Robert J. Shelby |
| GORSUCH, LTD., | Chief Magistrate Judge Dustin B. Pead |
| Defendant. | |

Before the court is Defendant Gorsuch Ltd.'s Motion to Dismiss or Transfer pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1404(a).[1] Having reviewed the Motion and associated briefing, the court GRANTS Gorsuch's Motion to Dismiss for lack of subject matter jurisdiction.[2] Although Gorsuch raises alternative grounds for dismissal, the court limits its analysis to arguments relevant the exercise of its subject matter jurisdiction.

## BACKGROUND

The following factual summary is taken from Plaintiff's Class Action Complaint[3] and various exhibits submitted in support of the Motion.

Gorsuch is a specialty retailer that sells high-end, luxury winter sportswear, resort wear, and home accessories.[4] Since at least January 1, 2004, Gorsuch has offered its products for sale

---

[1] Dkt. 18, *Motion to Dismiss under Fed. R. Civ. Pro. 12(B)(1), or to Transfer Pursuant to 28 U.S.C. §1404(a)* (*Motion*).

[2] Under DUCivR 7-1(g), the court finds oral argument is unnecessary and resolves the Motion based on the parties' briefing.

[3] Dkt. 1, *Class Action Complaint* (*Complaint*).

[4] *Id.* ¶¶ 2, 13; Dkt. 18-1, *Declaration of Alexandra Sandler* (*Sandler Decl.*) ¶ 2.

1

through physical catalogs and a website.[5]  As part of its business operations, Plaintiff alleges Gorsuch maintains a vast digital database comprised of its customers' names, home addresses, and purchase histories (collectively, Private Purchase Information).[6]  To supplement its revenues, Gorsuch allegedly sells this Private Purchase Information and other categories of individualized data to data aggregators, data appenders, data cooperatives, and other third parties without providing notice to its customers.[7]

In 2024, Plaintiff placed purchase orders on Gorsuch's website.[8]  Plaintiff claims she initiated her orders within Utah, and she claims Gorsuch completed the sales by shipping the products directly to her Utah home address.[9]  Plaintiff also alleges Gorsuch failed to notify her that it would disclose her Private Purchase Information, and that she never authorized Gorsuch to do so.[10]  After completing these sales, Gorsuch allegedly shared her Private Purchase Information with various third parties for compensation.[11]

Plaintiff initiated this proposed class action in June 2024, alleging Gorsuch violated Utah's Notice of Intent to Sell Nonpublic Personal Information Act (NISNPIA).[12]  In October 2024, Gorsuch filed the present Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1404(a).[13]  After the Motion was fully briefed,[14] the Governor of Utah signed into

---

[5] *Complaint.* ¶ 51; *Sandler Decl.* ¶ 2.

[6] *Complaint* ¶¶ 1, 45.

[7] *Id.* ¶ 5.

[8] *Id.* ¶ 9; *Motion* at 2.

[9] *Complaint* ¶ 9.

[10] *Id.* ¶¶ 10.

[11] *Id.* ¶ 11.

[12] *See generally Complaint* ¶¶ 1–76.

[13] *See generally Motion.*

[14] *See* Dkt. 27, *Plaintiff's Opposition to Defendant's Motion to Dismiss or Transfer (ECF No. 18)* (*Opposition*); Dkt. 28, *Reply in Support of Motion to Dismiss or Transfer* (*Reply*).

law S.B. 150, which makes significant changes to NISNPIA's text.[15]  S.B. 150 is set to take effect on May 7, 2025.[16]  Because the amendment is relevant to the court's exercise of subject matter jurisdiction, the court issued an Order to Show Cause, inviting the parties to submit additional briefing on the effect of the NISNPIA amendment on the court's jurisdiction and on Gorsuch's outstanding Motion.[17]  The deadline to respond to the court's Order has now passed, and the court considers the parties responses in conjunction with their briefing on the Motion.[18]

## LEGAL STANDARD

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction take two forms: facial attacks and factual attacks.[19]  A facial attack challenges the sufficiency of the complaint, while a factual attack presents additional evidence in the form of affidavits or otherwise to challenge the court's jurisdiction.[20]  In evaluating a facial attack, the court "must accept the factual allegations in the complaint as true,"[21] and "apply a standard patterned on Rule 12(b)(6)."[22]  When evaluating a factual attack, "a district court may not presume the truthfulness of the complaint's factual allegations."[23]  Instead, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[24]

---

[15] Dkt. 46-1, *Nonpublic Personal Information Amendments* (hereafter, *S.B. 150*).

[16] *Id.*

[17] Dkt. 40, *Docket Text Order*.

[18] *See* Dkt. 45, *Response to Order to Show Cause*; Dkt. 47, *Plaintiff's Response to Order to Show Cause*.

[19] *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022).

[20] *Muscogee (Creek) Nation v. Okla. Tax. Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

[21] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

[22] *Garling v. EPA*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017).

[23] *Rural Water Dist. 2 v. City of Glenpool*, 698 F.3d 1270 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)).

[24] *Id.* (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)).

## ANALYSIS

Gorsuch argues Federal Rule of Civil Procedure 23 must yield to the class action bar found in § 203(3) of NISNPIA in light of the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*[25]  And Gorsuch argues application of § 203(3) deprives this court of subject matter jurisdiction over Plaintiff's claims because, without a viable class action, Plaintiff cannot meet the amount-in-controversy requirement to establish diversity jurisdiction under 28 U.S.C. § 1332(d).[26]  Plaintiff, on the other hand, insists this court has subject matter jurisdiction pursuant to the Class Action Fairness Act (CAFA) notwithstanding the amendments to NISNPIA because there are more than 100 class members, the matter in controversy exceeds the sum or value of $5,000,000, and minimum diversity among the parties exists.[27]

The court agrees with Gorsuch that the recent amendments to NISNPIA provide the court with the evidence necessary to conclude that, under the Supreme Court's framework articulated in *Shady Grove*, applying of Rule 23 in this case would impermissibly abridge, enlarge, and modify Utah's substantive rights and remedies in violation of the Enabling Act (28 U.S.C. § 2072(b)).  Accordingly, § 203(3) of NISNPIA applies in federal court and precludes Plaintiff from maintaining her class action lawsuit.  And without the ability to proceed as a class, Plaintiff cannot satisfy the amount-in-controversy requirement necessary for this court to exercise diversity jurisdiction.

---

[25] 559 U.S. 393 (2010) (hereafter, *Shady Grove*).  Gorsuch also argues (1) Plaintiff lacks standing because she failed to adequately allege an injury in fact, (2) Plaintiff agreed to certain contractual terms on Gorsuch's website that bar Plaintiff's claims, and (3) the case should alternatively be transferred to the parties' contractually selected forum. *Motion* at 3–9, 14, 18–20.  But because the court finds it does not have subject matter jurisdiction, the court may not consider these arguments.

[26] *Motion* at 13–14.

[27] *Plaintiff's Response to Order to Show Cause* at 23; 28 U.S.C. §§ 1332(d)(2), (5).

The court proceeds by providing an overview of the recent amendments to NISNPIA, a summary of the *Shady Grove* framework and this court's prior decisions on this subject, and an explanation about why the recently enacted version of NISNPIA provides the court with conclusive evidence that Plaintiff's class action lawsuit should be barred in federal court.

## I.    The Amendments to NISNPIA

In its most basic sense, the operative version of NISNPIA prohibits a commercial entity from disclosing nonpublic personal information obtained as a result of a consumer transaction without providing written or oral notice to the consumer.[28]  NISNPIA provides consumers with a private cause of action and imposes liability of $500 "for each time the commercial entity fails to provide the [required] notice . . . ."[29]  However, § 203(3) of NISNPIA prohibits consumers from suing as a class.  The current version of NISNPIA, which was enacted in 2004, reads in relevant part:

> 13-37-203 Liability.
>
> (1) A person may bring an action against a commercial entity in a court of competent jurisdiction in this state if: (a) the commercial entity enters into a consumer transaction with that person; (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and (c) the commercial entity violates this chapter.
>
> (2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person who brings the action for: (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and (b) court costs.
>
> (3) A person may not bring a class action under this chapter.[30]

---

[28] *See* Utah Code § 13-37 (2004).

[29] *Id.* § 13-37-203(1)–(2) (2004).

[30] *Id.* § 13-37-203 (2004).

However, the Governor of Utah recently signed into law S.B. 150, which amends § 203 of NISNPIA.  The new version of § 203, which takes effect on May 7, 2025, reads as follows with the new provisions underlined:

13-37-203 Liability <u>and remedy</u>.

(1) <u>As a person's only remedy under this chapter</u>, a person may bring an individual action, <u>not a class action or act in a representative capacity, against a commercial entity in a federal or state court with jurisdiction</u> if: (a) the commercial entity enters into a consumer transaction with that person; (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and (c) the commercial entity violates this chapter.

(2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person <u>individually, but not to a class or to a person in a representative capacity</u>, who brings the action for: (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and (b) court costs.

(3) <u>An action for a violation of this chapter may only be brought in accordance with Section 78B-2-302 within one year from the day of the consumer transaction at issue.</u>

(4) <u>The Legislature finds that since January 1, 2004, the prohibition on bringing a class action is a remedy provision and not merely procedural.</u>[31]

## II.    This Court's Prior Decisions

At issue here is whether Plaintiff may avail herself of the class action mechanism under Federal Rule of Civil Procedure 23 and establish diversity jurisdiction under CAFA when the 2004 version of § 203(3) precludes class actions altogether.  The undersigned recently analyzed and reanalyzed Gorsuch's same arguments regarding the contest between Rule 23 and § 203(3) under the *Shady Grove* framework in the case of *Arnstein v. Sundance Holdings Group, LLC*[32]

---

[31] *S.B. 150* (emphasis added).

[32] Specifically, the court issued two opinions that resolved a motion to dismiss and a motion for interlocutory appeal. *See* Case No. 2:24-cv-00344-RJS-DAO, 2024 WL 4882857 (D. Utah Nov. 25, 2024) (slip copy) (resolving the motion to dismiss); Case No. 2:24-cv-00344-RJS-DAO, 2025 WL 562543 (D. Utah Feb. 20, 2025) (slip copy) (resolving the motion for interlocutory appeal).

and found Rule 23 controlled.  Another judge in this district addressed the same issue under the same framework and similarly found Rule 23 controlled.[33]  For context, the court provides a high-level overview of the *Shady Grove* framework and its analysis in its *Arnstein* decisions.

*Shady Grove* sets out the familiar, two-step framework enabling federal courts to determine which law controls "[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity."[34]  The first step requires courts to determine whether the federal rule directly conflicts with the state law.[35]  If there is no conflict, the court "engage[s] in the traditional Rules of Decision Act inquiry under [*Erie Railroad Company v. Tompkins*[36]] and its progeny."[37]  If there is a conflict, the court proceeds to the second step and must apply the federal rule as long as it represents a valid exercise of Congress's rulemaking authority under the Rules Enabling Act by not abridging, enlarging, or modifying any substantive right.[38]  The court refers to the two components of the framework as Step One and Step Two respectively.

Gorsuch's first argument, like the defendant's in *Arnstein*,[39] centers on which of the *Shady Grove* opinions guide Step One.[40]  The *Shady Grove* decision was fragmented, with Justice Scalia writing for the plurality, Justice Stevens joining parts of the plurality opinion and

---

[33] *See Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-cv-00651-JNP-DBP, 2023 WL 6318108 (D. Utah Sept. 28, 2023).

[34] *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring).

[35] *See Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 943 (10th Cir. 2020) (citing *Shady Grove*, 559 U.S. at 399 (plurality opinion)).

[36] 304 U.S. 64 (1938).

[37] *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring).

[38] *Id.* at 422 (citing 28 U.S.C. § 2072(b)).

[39] *See Arnstein*, 2024 WL 4882857, at *4; *Arnstein*, 2025 WL 562543, at *3.

[40] *Motion* at 10.

in the holding but concurring separately, and four justices dissenting.[41]  This split has created some confusion among federal courts regarding which parts of the *Shady Grove* opinion are controlling.[42]  But it is well established that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"[43]  In *Shady Grove*, Justice Stevens joined Parts I and II-A of Justice Scalia's plurality opinion.[44]  Because Part II-A addresses Step One, Justice Scalia's opinion controls that part of the framework.  The controlling effect of this part of the opinion has been recognized by courts around the country[45] and by the Tenth Circuit.[46]  Justice Scalia's opinion is helpful here because it forecloses any argument that Rule 23 does not directly conflict with a state law that limits or imposes additional requirements beyond those articulated in Rule 23.[47]

---

[41] *Shady Grove*, 559 U.S. 395–96 (plurality opinion).

[42] *See, e.g.*, *Stender*, 958 F.3d at 943, 947 ("This court has held that Justice Stevens's concurrence states Supreme Court law under the rule stated in *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) . . . Others, including then-Judge Kavanaugh, think that the view of the plurality opinion governs on step two of the analysis because it merely restates law settled by *Sibbach* and no other Justice (including the dissenters) expressed agreement with the concurrence." (first citing *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018); then *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217–18 (10th Cir. 2011); then *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010); and then *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336–37 (D.C. Cir. 2015))).

[43] *Marks v. U.S.*, 430 U.S. 188, 193 (1977) (citation omitted).

[44] *Shady Grove*, 559 U.S. at 395–96 (plurality opinion); *id.* at 416 (Stevens, J., concurring).

[45] *See, e.g.*, *Arnstein*, 2024 WL 4882857, at *4; *Arnstein*, 2025 WL 562543, at *3–5;.*Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1254 (D. Utah 2018) (citation omitted); *Curry*, 2023 WL 6318108, at *3; *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) ("But before turning to that question, it is important to note that Justice Stevens joined parts of Justice Scalia's opinion. Those parts, labeled sections I and II–A, thus were joined by five justices; those parts were the opinion of the Court. And those parts confirmed the analysis long followed in resolving conflicts between the Federal Rules of Civil Procedure and contrary provisions of state law."); *Abbas*, 783 F.3d at 471 n.1.

[46] *See Stender*, 958 F.3d at 943 ("There were three opinions. Four Justices dissented. Justice Scalia wrote an opinion joined in full by three Justices. Justice Stevens joined part of Justice Scalia's opinion (making that part a majority opinion) and wrote a separate concurring opinion.  The majority opinion set forth the framework for resolving the issue: a Federal Rule governs over state law (1) when it 'answer[s] the same question' as the state law, and (2) it is not 'ultra vires.'").

[47] *Arnstein*, 2025 WL 562543, at *3.

Indeed, Justice Scalia interpreted Rule 23 as creating "a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."[48]  He also clarified how Rule 23's use of the word "may" in the phrase "[a] class action may be maintained" affords discretion to maintain a class action to the plaintiff, not the court.[49]  Thus, a federal district court is *required* to entertain a class action once a plaintiff makes the required showings under 23(b), provided there is no Enabling Act violation,[50] and state statutes that impose heightened class action requirements or limit the claims eligible for class action adjudication necessarily conflict with Rule 23.[51]  Said differently, "Rule 23 provides a one-size-fits-all formula for deciding the class action question."[52]

Understanding this, the court in *Arnstein* recognized that under Rule 23(b), a plaintiff can always maintain a class action once certain requirements are met, regardless of the claim, but under § 203(3), a plaintiff is never allowed to bring a class action under NISNPIA.[53]  Accordingly, the court concluded that § 203(3) and Rule 23 were in direct, unavoidable conflict.[54]

Having found a direct conflict under Step One, the court recognized Rule 23 would govern unless it violated the Enabling Act under Step Two.[55]  Justice Stevens departed from the majority's holding in *Shady Grove* with respect to Step Two.  His concurrence therefore controls

---

[48] *Shady Grove*, 559 U.S. at 398 (majority opinion).

[49] *Id.* at 400 (citing Fed. R. Civ. P. 23(b) and explaining how "[c]ourts do not maintain actions; litigants do").

[50] *See id.* ("Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts.'" (citation omitted) (emphasis in original)).

[51] *Id.* at 401 ("[A] State cannot limit [Rule 23's] permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements.").

[52] *Id.* at 399.

[53] *See Arnstein*, 2024 WL 4882857, at *4.

[54] *Id.* (citation omitted).

[55] *See id.*; *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring) (citing 28 U.S.C. § 2072(b)).

this part of the analysis in the Tenth Circuit.[56]  Under this Step, a conflicting federal rule controls unless it violates the Enabling Act by abridging, enlarging, or modifying a state-created right or remedy.[57]  Instead of joining the plurality and finding an Enabling Act violation based on the form of the state law—*i.e.*, whether it is traditionally substantive or procedural—Justice Stevens directs federal courts to focus on whether the state rule "function[s] as a part of the [s]tate's definition of substantive rights and remedies."[58]  Thus, states may use "a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies,"[59] and federal courts must respect that choice.  This situation is rare, however.  Justice Stevens cautions "the bar for finding an Enabling Act problem is a high one"[60] and there must be "little doubt" that application of a federal rule would alter a state-created right or remedy.[61]  Indeed, "few seemingly [state] 'procedural' rules define the scope of a substantive right or remedy."[62]  Examples of such state procedural rules include those that "make it *significantly* more difficult to bring or to prove a claim, thus serving to limit the scope of that claim" or "define the amount of recovery."[63]  Justice

---

[56] *Shady Grove*, 559 U.S. at 411 (plurality opinion) ("The concurrence . . . departs from us only with respect to the second part of the test, *i.e.*, whether application of the Federal Rule violates § 2072(b) . . . ."); *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotations omitted)); *Curry*, 2023 WL 6318108, at *3 ("The Stevens concurrence is controlling in the Tenth Circuit as to *Shady Grove* Step Two . . . ." (citations omitted)); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) (relying on the Stevens concurrence to determine "whether the state law actually is part of a State's framework of substantive rights or remedies" (citation omitted)).

[57] *Shady Grove*, 559 U.S. at 431 (Stevens, J., concurring).

[58] *Id.* at 416–17.

[59] *Id.* at 420.

[60] *Id.* at 432.

[61] *Id.* at 432.

[62] *Id.* at 428.

[63] *Id.* at 420 (emphasis added).  Examples include requiring "plaintiffs to post bond before suing," "state statute[s] of limitations," "state-imposed burdens of proof," or "state procedure for examining jury verdicts as means of capping the available remedy."  *Id.* at 420, 420 n.4 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555 (1949), *Guar. Tr. Co. v. York*, 326 U.S. 99 (1945), and *Gasperini v. Ctr. for Hums.., Inc.*, 518 U.S. 415, 427 (1996)).

Stevens also recognized that "legislative history" could be useful "to distinguish between procedural rules adopted for *some* policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy."[64]  And only those state rules that "define[] the dimensions of [a] claim itself" would present an Enabling Act problem.[65]

Because *Shady Grove* counsels that the ability to join together as a class is "a traditionally procedural question,"[66] it would be rare for a state's class action bar to define the scope of state substantive rights or remedies.[67]  And in *Arnstein*, this court concluded § 203(3) did not implicate one of the rare situations indicating an Enabling Act violation.[68]  Still, the court recognized Utah's act of cabining § 203(3) to apply only to claims brought under NISNPIA made the determination of whether § 203(3) defined the scope of substantive rights or remedies a closer call than the more universally applicable statute at issue in *Shady Grove*.[69]  But the court ultimately doubted whether § 203(3) was "so intertwined" with NISNPIA's rights or remedies that it "function[ed] to define the[ir] scope" or that it "define[d] the dimensions of [a NISNPIA] claim itself."[70]  More specifically, the court found problematic that fact that §§ 203(1) and 203(2)—the provisions creating the NISNPIA's rights, duties, and remedies—never referenced,

---

[64] *Shady Grove*, 559 U.S. at 433 (Stevens, J., concurring) (emphasis in original).

[65] *Id.* at 433–34.

[66] *Id.* at 429 (Stevens, J., concurring) ("[W]hether to join plaintiffs together as a class" is "a traditionally procedural question."); *see also Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1254 (10th Cir. 2018) (Tymkovich, C.J., concurring) (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511–13 (2018)); *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[67] *See Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring); *see also Curry*, 2023 WL 6318108, at *6 (explaining how because "Rule 23 is merely a 'species of joinder,' . . . [t]he traditionally procedural class action form in a particular statute must, then, be truly inseparable from the substantive rights and remedies before a Rule Enabling Act problem arises." (citing *Shady Grove*, 559 U.S. at 423)).

[68] *Arnstein*, 2024 WL 4882857, at *6 (citing *Shady Grove*, 559 U.S. at 420).

[69] *Id.* at *7.

[70] *Id.* at *7–8 (citing *Shady Grove*, 559 U.S.at 423, 433–34 (Stevens, J., concurring)).

acknowledged, or incorporated the class action bar.[71]  Indeed, other state rules found to control

over Rule 23 created the class action limitation within the very sentence or subsection that

created the corresponding right or remedy, which provided "much stronger evidence suggesting

the class action bar [was] actually bound up with a state right or remedy."[72]  Moreover, the

defendant in *Arnstein* never presented the court with legislative history suggesting § 203(3) "was

adopted with the intent to define the scope of NISNPIA's rights or remedies."[73]  Accordingly,

and in light of the movant's heavy burden to show an Enabling Act violation, the court

concluded Rule 23 controlled the issue of whether a class action could proceed in federal court.[74]

### III.    The Effect of Recent Amendments to NISNPIA on the Court's *Shady Grove* Analysis

Here, Gorsuch presents no persuasive argument that the court should depart from its

holding in *Arnstein* with respect to Step One.[75]  Thus, by again finding there is a direct conflict

between the 2004 version of § 203(3) and Rule 23, Rule 23 governs unless it violates the

Enabling Act under Step Two.[76]

---

[71] *Id.* at *7.

[72] *Id.* (gathering citations).

[73] *Id.* at *8.

[74] *Id.* at *8–9.

[75] Gorsuch urges the court to consider the *Callegari v. Blendtec, Inc.* case where this court found no conflict between Rule 23 and the Utah Consumer Sales Practices Act's (UCSPA's) tolerance of class actions only when a plaintiff pleads damages "caused by an act or practice" as specified under the UCSPA.  No. 2:18-cv-308-DB, 2018 WL 5808805, at *2 (D. Utah Nov. 6, 2018).  In *Callegari*, the court concluded the two rules could operate "side by side" because "[t]he language of Rule 23 may be read to be permissive" and "Rule 23 does not explicitly set forth exclusive procedural requirements for maintaining a class action."  *Id.* at *4.  But this court respectfully disagrees with the reasoning in *Callegari*.  As the Supreme Court instructed in Shady Grove, Rule 23 creates a categorical rule entitling a plaintiff to pursue his claim as a class action.  *Shady Grove*, 559 U.S. at 398 (majority opinion).  Once a plaintiff elects to bring a class action and satisfies Rule 23's requirements, courts must permit plaintiffs to proceed as a class.  As such, Rule 23 cannot be read to be permissive under Step One, and any state statute—like NISNPIA or the UCSPA—restricting a party's ability to bring a class action more than what is already articulated in Rule 23 necessarily and directly conflicts with the Rule.

[76] *See Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring) (citing 28 U.S.C. § 2072(b)).

A preliminary issue raised by the parties is the extent to which the court may consider the 2025 amendments to NISNPIA given Plaintiff initiated this suit in 2024.[77]  The parties dispute whether Utah's general bar against retroactive application of newly codified laws precludes consideration of the amended statute[78] and whether applying the amended statute would violate the Utah Constitution.[79]  But the court need not wade into those murky waters.  The court confines its analysis to weighing the amendment's evidentiary impact on the *Shady Grove* analysis on the 2004 version of NISNPIA, and it concludes Gorsuch has met its heavy burden of demonstrating an Enabling Act violation if the court were to apply Rule 23 in this case.  And because this results in a lack of subject matter jurisdiction, the court lacks the power to resolve the retroactivity and constitutional challenges forwarded by the parties.[80]

Indeed, under Step Two of *Shady Grove*, the recent amendments to NISNPIA provide strong evidence that applying Rule 23 to the present dispute would impermissibly abridge, enlarge, and modify Utah's definition of its rights and remedies in violation of the Enabling Act. More specifically, the recent amendments to NISNPIA leave the court with "little doubt" that NISNPIA's class action bar is a "traditionally procedural vehicle" that Utah employs—and has always employed—"as a means of defining the scope of [NISNPIA's] substantive rights or remedies."[81]  The amendments provide the court with two key pieces of evidence to support this determination.

---

[77] *Complaint*; *Plaintiff's Response to Order to Show Cause* at 10.

[78] *See, e.g.*, *Plaintiff's Response to Order to Show Cause* at 10.

[79] *See, e.g.*, *id.* at 19.

[80] *See U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 77 (1988) (recognizing how a challenge to subject matter jurisdiction goes directly to a court's "power to issue [an] order" in a case and recognizing that courts, no less than the political branches of the government, must respect the limits of their authority").

[81] *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring).

First, the amended statutory text expressly indicates that, "since January 1, 2004," the Utah legislature has considered NISNPIA's class action bar "a remedy provision and not merely procedural.[82]  As the Supreme Court has recognized, "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction."[83]  Utah courts similarly recognize that "[a]n amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act."[84]  This express statutory language therefore provides strong evidence of the intent of the law as originally enacted in 2004.  In the context of *Shady Grove*, it provides strong evidence that NISNPIA's class action bar has always operated to define the scope of NISNPIA's remedy.[85]

Second, recent legislative history makes clear that the Utah legislature has always deemed the class action bar substantive in nature and finds the pursuit of NISNPIA class actions in federal court antithetical to that judgment.  When introducing the bill to the Senate Judiciary, Law Enforcement, and Criminal Justice Committee, Senator Kirk A. Cullimore explained that NISNPIA had prohibited class actions since its enactment in 2003, but that this prohibition was not being applied in federal courts as a result of subsequent legal developments, including *Shady Grove*.[86]  Senator Cullimore explained that this result was "not contemplated by the legislature" and that the amendments were designed to clarify that the class action bar was substantive "as

---

[82] *S.B. 150*.

[83] *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 380–81 (1969) (gathering citations).

[84] *State v. Bryant*, 965 P.2d 539, 546 (Utah. Ct. App. 1998) (quoting *In re D.B.*, 925 P.2d 178, 182 n.5 (Utah Ct. App. 1996)).

[85] *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring).

[86] Dkt. 54-2, (case no. 2:24-cv-0034-RJS-DAO), *Exhibit B: Transcript of Utah Legislative Proceedings* at 3:8–4:12.

opposed to what could be deemed a severable procedural right."[87]  The members voted 6-0 to favorably recommend the bill.[88]

Later, Senator Cullimore presented a similar explanation before the House Judiciary Committee.  He began his remarks by noting that the bill "is not really changing Utah policy at all . . . There's always been a bar on a class action type lawsuit for this.  That has been the policy of Utah since 2003.  So, over 20 years."[89]  The amendments, he explained, were designed to ensure that NISNPIA's class action bar would be "recognized as a substantive right, which [he] believe[d] was the intent of the legislature all along."[90]  No member of the Committee voiced disagreement with the amendments or Senator Cullimore's assessment.  The House Judiciary Committee voted unanimously to favorably recommended the bill.[91]

The bill received the same reception before the Senate and House floors.  Addressing the Senate, Senator Cullimore explained that the legislature had determined, twenty years ago, that NISNPIA should not be brought through class actions.[92]  He explained that this Amendment was a reaction to legal developments post-dating the law's enactment that had read the bar as procedural and therefore inapplicable in federal court.[93]  The Senate passed the bill 28-0.[94]

Finally, House sponsor Representative Anthony E. Loubet explained to the assembled House that the legislature's "current policy" held "since 2003" was to prohibit class action

---

[87] *Id.* at 4:6–12.

[88] *Id.* at 6:2–3.

[89] *Id.* at 9:21–10:9.

[90] *Id.* at 10:22–11:2.

[91] *Id.* at 13:23–24.

[92] *Id.* at 6:11–23.

[93] *Id.*

[94] *Id.* at 9:10–13.

lawsuits under NISNPIA.[95]  Representative Loubet explained that subsequent developments had

opened Utah businesses to NISNPIA class actions in federal court based on an assessment that

the provision was procedural.[96]  This bill, he explained, clarified that the class action bar was

substantive and "not procedural in nature."[97]  No representative questioned or disagreed with

Representative Loubet's recitation.  The House passed the bill 61-0.[98]

In each of these legislative sessions, the bill sponsors articulated a view that NISNPIA

was always designed to prohibit class actions, that the class action bar was integral to

NISNPIA's rights and remedies, and that amendments were needed to preserve that legislative

judgment in the face of subsequent judicial decisions, including *Shady Grove*.  The legislature

expressed its unanimous approval of the amendments.

Ultimately, the statements by the bill sponsors, the bill's unanimous approval, and the

bill's own text provide some of the clearest possible evidence that the Utah legislature has

always deemed the class action bar operates to define the scope of NISNPIA's rights and

remedies.[99]  Coupling all the above-cited evidence with the reservations this court had in

*Arnstein* that the class action bar is cabined to a single, non-procedural, state statutory section,

the court concludes that applying Rule 23 in in this case would impermissibly abridge, enlarge or

modify Utah's substantive rights and remedies under the 2004 version of NISNPIA.[100]

Accordingly, NISNPIA's class action bar prevents Plaintiff from maintaining her class action in

federal court.

---

[95] *Id.* at 14:13–17.

[96] *Id.* at 14:18–15:8.

[97] *Id.* at 15:4–8.

[98] *Id.* at 15:18–22.

[99] *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring).

[100] *Arnstein*, 2024 WL 4882857, at *7.

As explained above, Plaintiff's only basis for federal jurisdiction is diversity jurisdiction under CAFA.[101]  But without the ability to proceed as a class, Plaintiff's individual claim is limited to $500—well below the jurisdictional threshold required to maintain her diversity action in federal court.  Still, Plaintiff points to the case of *Freeport-McMoran, Inc. v. K N Energy, Inc.* for the proposition that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."[102]  While it is true "[s]ubject-matter jurisdiction generally does not vanish once it properly attaches,"[103] federal courts "have an ongoing duty to ensure that [their] jurisdiction is proper."[104]  And here, jurisdiction never properly attached.  As explained above, jurisdiction did not exist at the time Plaintiff commenced this action because the class action bar in the 2004 version of NISNPIA should have always applied in federal courts.  The court is aware of no authority suggesting it cannot readdress prior jurisdictional decisions in the event new facts or authority come to light that demonstrate "at the time the case was filed as a class action," diversity jurisdiction did not exist.[105]  Indeed, even *final judgments* rendered by courts lacking jurisdiction can be void.[106]  Thus, Plaintiff's argument that jurisdiction over her case somehow "vested" when her Complaint was filed is unsupported and unpersuasive.[107]

---

[101] *Complaint* ¶ 14.

[102] 498 U.S. 426, 428 (1991) (citations omitted); *Plaintiff's Response to Order to Show Cause* at 8.

[103] *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 706 (10th Cir. 2004) (citation omitted).

[104] *Id.*; *see also 1mage Software, Inc. v. Reynolds and Reynolds Co.,* 459 F.3d 1044, 1048 (10th Cir. 2006) (explaining how federal courts have "'an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" (citation omitted)).

[105] *See Pontrelli v. MonaVie, Inc.*, No. 2:17-CV-01215-DN-DBP, 2019 WL 2436437, at *2 (D. Utah June 11, 2019).

[106] *Burnham v. Superior Ct. of Cal.,* 495 U.S. 604, 608–09 (1990).

[107] *Plaintiff's Response to Order to Show Cause* at 7.

## CONCLUSION

For the foregoing reasons, Gorsuch's Motion is GRANTED.[108]  Plaintiff's Class Action Complaint is DISMISSED for lack of subject matter jurisdiction.[109]

SO ORDERED this 5th day of May 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[108] Dkt. 18.

[109] Dkt. 1.  Dismissals for lack of jurisdiction are without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

18